No. 22,375.

THE STATE OF KANSAS, *Appellee*, V. EARL BOWMAN, *Appellant*.

SYLLABUS BY THE COURT.

CRIMINAL LAW — *Prosecution for Grand Larceny — Statute of Limitations.* On March 8, 1916, a complaint was filed on which a warrant was issued and delivered to the sheriff for the arrest of the defendant for felony. At that time the defendant was serving sentence for felony, but was outside the penitentiary, under a parole granted in August, 1915. On March 6, 1916, the parole was revoked, and on March 17 he was returned to the penitentiary. He remained in the penitentiary until August 20, 1918, when he was paroled. He was finally discharged on September 19, 1918, and the warrant was served on September 28, 1918. The information subsequently filed charged that the offense was committed "on the —— day of November, 1915." *Held:*

1. LARCENY—*Date of Offense Sufficiently Stated.* The date of the offense was stated with sufficient certainty.

2. LIMITATION OF ACTIONS—*Larceny—Information.* The information did not show on its face that the prosecution was barred by the two-year statute of limitations.

3. SAME—*Judicial Notice — Transcript of Preliminary Proceedings — Presumptions.* The court took judicial notice, from the transcript of the preliminary proceedings on file in the cause, of the time when the complaint was filed and the warrant was issued; the presumption was the sheriff performed his official duty in executing the warrant; and the record, aided by the presumption, disclosed commencement of prosecution within the statutory period.

4. SAME—*Confinement in Penitentiary After Prosecution Was Begun.* The statute specifying that time of absence of the defendant from the state, concealment to avoid service of process, and concealment of the fact of crime, shall not be included in computing the period of limitation, relates to the time within which action shall be commenced, and does not forbid exclusion of the time the defendant was in the penitentiary after prosecution was commenced.

5. SAME.—*Acts Showing Commencement of Criminal Prosecution.* A criminal prosecution is commenced when a warrant on which the defendant is arrested is duly issued in good faith and delivered to the sheriff for service. This is true, although there may be subsequent unnecessary delay in executing the writ, but the time such delay continues is included in computing the period of limitation.

6. SAME—*Defendant Confined in Penitentiary—Duty of Sheriff.* The sheriff was not authorized to execute the warrant during the time the defendant was confined in the penitentiary, and such time may not be

credited to him, in computing the statutory period, as unnecessary or unreasonable delay in executing the writ.

7. SAME. The sheriff's official duty did not require him to request parole or other release of the defendant from the penitentiary for arrest and prosecution, even if such request would have been availing; and the sheriff is not chargeable with lack of diligence or failure to improve opportunity in executing the writ because he did not make such request.

8. SAME—*Prosecution Begun in Good Faith.* The proceedings examined, and *held,* there was no evidence whatever, admitted or offered for admission, that the prosecution was not commenced in good faith.

9. APPEAL—*No Prejudicial Error.* Various assignments of error considered, and held to be without substantial merit.

Appeal from Pratt district court; GEORGE L. HAY, judge. Opinion filed March 6, 1920. Affirmed.

*W. R. Smith,* of Topeka, *Seward I. Field,* and *A. L. Orr,* both of Medicine Lodge, for the appellant.

*Richard J. Hopkins,* attorney-general, *E. R. Barnes,* county attorney, for the appellee; *R. F. Crick,* and *L. G. Turner,* both of Pratt, of counsel.

The opinion of the court was delivered by

BURCH, J.: The defendant was convicted of larceny of thirty-three head of cattle, and appeals.

What we are accustomed to call "the merits of the case" are not involved. There are none. In February, 1913, the defendant pleaded guilty to stealing a carload of cattle, and was sentenced to the penitentiary. The trial judge, in his statement made for the information of the penitentiary officials, said the defendant had "an irresistible inclination to steal cattle." In August, 1915, the defendant was paroled, on condition he kept out of the particular cattle district with which he had been familiar all his life. The old lure was too strong. He returned to his former haunts, and on November 13 took the cattle in question from the Bobbitt pasture, drove them to Pratt, and the next morning shipped them to St. Joseph, Mo., where they were sold on the market. At the trial he interposed a feeble alibi, but the Gibraltar of his defense was the statute of limitations, kept running through bad faith of the prosecution.

The complaint was filed and the warrant was issued on March 8, 1916. The defendant was arrested on September 28, 1918. The information charged that the larceny was committed "on the — day of November, 1915." The statutory period within which prosecution might be commenced after commission of the offense was two years. The parole which the defendant was enjoying when he committed the larceny was revoked on March 6, 1916, and a warden's warrant was issued for his apprehension. On March 17, 1916, the parole officer took the defendant into custody under this warrant, and returned him to the penitentiary. In 1918, the defendant was granted a temporary parole which extended from March 1 to March 12. On August 20, 1918, the defendant was paroled, and on September 19 he was finally discharged. From March 8, 1916, when the warrant in the present case was issued, until September 28, 1918, when the warrant was served, the defendant was confined in the penitentiary, under the former conviction, all the time except about sixty days. From the time the offense was committed until the defendant was arrested he was confined in the penitentiary all the time except approximately six months.

It is said the information was insufficient because it did not state with definiteness and certainty the exact date of the offense. This was unnecessary. (Gen. Stat. 1915, § 8019; *The State of Kansas v. Barnett,* 3 Kan. 250; *The State v. Brooks,* 33 Kan. 708, 7 Pac. 591.)

It is said the information disclosed on its face that the prosecution was commenced more than two years after the offense charged was committed. This is not true. The information did not disclose, on its face or otherwise, when the prosecution was commenced. The information was a step in the prosecution subsequent to its commencement. The certified transcript of the earlier proceedings was on file in the cause, from which the court took judicial notice of the time when the complaint was filed and the warrant issued. The presumption was that the sheriff performed his official duty in executing the warrant, and without evidence on the subject, the court would have been authorized to instruct the jury that the prosecution was commenced on March 8, 1916, or within less than four months after the offense was committed. (*The State v.*

The State v. Bowman.

*Stevens,* 56 Kan. 720, 723, 44 Pac. 992; *The State v. Water-man,* 75 Kan. 253, 88 Pac. 1074; *The State v. White,* 76 Kan. 654, 92 Pac. 829.)

The defendant says the time of his confinement in the penitentiary may not be excluded in computing the statutory period. This claim is based on the language of the statute specifying that time of absence from the state, concealment to avoid service of process, and concealment of the fact of the crime, shall not be included in computing the period of limitation (Gen. Stat. 1915, § 7942); and on a paragraph of the opinion of this court in the case of *In re Griffith, Petitioner,* 35 Kan. 377, 11 Pac. 174, which reads as follows:

"It is further claimed in behalf of the state, that the time when Griffith was incarcerated in the state penitentiary should be excluded from the period of limitation. There is no ground whatever for this claim. The only exceptions to the statute are those mentioned in section 33 of the criminal code, and imprisonment in the penitentiary does not fall within any of them. He was, of course, not absent from the state, nor did he conceal the fact of the crime; neither can it be said that he concealed himself so that process could not be served upon him. He was convicted and imprisoned by the state, and of necessity the state and its officers were acquainted with his whereabouts." (p. 381.)

The statute relates to the time within which action shall be commenced, not prosecuted after it has been commenced, and the language of the opinion in the Griffith case refers to the same subject, as indicated by the syllabus, which reads as follows:

"Imprisonment in the state penitentiary does not fall within any of the exceptions of the limitations upon criminal prosecutions; and therefore the time of imprisonment of the accused within the state, which passes before a prosecution is begun, cannot be excluded from the statutory period of limitation." (p. 377.)

The *prima facie* showing made by the transcript, that the action was commenced on March 8, 1916, was open to dispute. In order that the complaint and warrant should constitute commencement of an action, it was essential that they be employed for the purpose for which they are provided. In the Griffith case, *supra,* a complaint was filed, but no warrant was issued until the statute had run. It was held no action was commenced before the statute had run. In the opinion the

court approved the ruling and language of the supreme court of Michigan in the case of *The People v. Clark*, 33 Mich. 112:

"The issuing of the warrant in good faith, and delivery to an officer to execute, is a sufficient commencement, if it appears that the defendant was afterwards arrested upon that warrant and bound over for trial." (p. 120.)

In the case of *In re Clyne, Petitioner*, 52 Kan. 441, 35 Pac. 23, a complaint was filed and a warrant was issued. At the time the warrant was issued the county attorney, representing the state, directed the sheriff not to serve it until he saw the sheriff again. The county attorney believed the defendant was absent from the state, and desired time in which to discover sufficient evidence to bind the defendant over. On the day the warrant was issued the defendant returned to the county in which the offense was committed, but the sheriff, following the county attorney's direction, delayed execution of the warrant for some five months, although he saw the defendant frequently, and could have made the arrest at any time. The warrant was served after the statutory period had elapsed. In the opinion it was said:

"We think the better rule is that the complaint must be filed and the warrant issued within the period limited by the statute; that it must be issued in good faith, and with the intention that it be presently served, and that the officer must proceed to execute it according to its command; that he must make the arrest within a reasonable time and at the first reasonable opportunity offered him. Neither the county attorney nor the sheriff, nor both together, can, by any voluntary act or by any neglect of official duty, extend the limit of the law." (p. 448.)

To be understood correctly, this language must be read in connection with the peculiar facts to which it referred and which it emphasized, and in connection with the syllabus of the decision, which states the law of the case as follows:

"A criminal prosecution is commenced when a warrant is duly issued and placed in the hands of a proper officer to be executed in good faith and with due diligence, and if so issued within the time limited by law for the commencement of such criminal prosecution, and executed thereafter without unnecessary delay, even though the arrest be made after the statutory limitation has run, the prosecution will still be deemed to have been commenced in time.

"Where a warrant is so issued, and where the sheriff has frequent opportunities for arresting the defendant, but fails for nearly five months to make the arrest, and the delay is at the request of the prosecuting officer, *held*, that the time of such unnecessary delay should

The State v. Bowman.

be computed as a part of the period of limitation prescribed by the statute." (Syl. ¶¶ 1, 2.)

The result is, the rule proposed in the Griffith case was adopted without material variation in expression. A prosecution is commenced when a warrant, on which the defendant is arrested, is duly issued in good faith and delivered to the sheriff for service. This is true, although there may be subsequent unnecessary delay in executing the writ. If, however, there be such delay, the time it continues is included in computing the period of limitation.

The defendant claims the full time he was in the penitentiary after the warrant was issued should be credited to him as unnecessary and unreasonable delay in executing the warrant. It is said the sheriff could have executed the warrant in the penitentiary, unless the warden objected, and that it was the duty of the sheriff to press execution of his warrant to the point of taking the defendant into custody and out of the penitentiary, unless prevented by the warden, who was not obliged to interfere. Specific instructions to the jury to this effect were requested, and refusal of the request is assigned and argued as error.

It ought not to be necessary to remind the defendant that the penitentiary is a place of imprisonment, maintained for the detention of persons convicted of felony, a felony being an offense punishable by confinement in the penitentiary. Confinement there may be lawfully terminated in one of two ways—by expiration of the term of sentence, or by virtue of some express provision of law. Departure from confinement under any other circumstances constitutes escape, which is itself a felony. Persons aiding or assisting an escape, and officers permitting an escape, are also guilty. There is no express provision of law which permits a sheriff to reduce the population of the penitentiary in the manner suggested, or which justifies a warden in regarding with indifference an attempt to do so. Therefore, the following instructions given the jury on the subject were eminently correct:

"There is no provision in our statute authorizing or permitting the sheriff of any county in this state to enter the penitentiary and therein to arrest a person there confined under any warrant which he may have for execution.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"While the defendant was in the state penitentiary, or in the actual custody of any officer, under a warrant issued by the warden of such

penitentiary, the sheriff of Pratt county would not and did not have, in contemplation of law, a reasonable opportunity offered him to execute the warrant and make the arrest of the defendant."

The defendant introduced some evidence, and offered more of the same kind, that if the sheriff had requested it, the defendant would have been paroled, or otherwise released to his custody for arrest and prosecution. The claim is that this evidence established want of diligence in executing the warrant, and reasonable opportunity to execute it. No duty rested on the sheriff, by virtue of possession of the warrant, or otherwise, to resort to any such method of procuring custody of the defendant; and the sheriff can be charged with lack of diligence and failure to improve opportunity with respect to nothing except subjects lying in the field of his official duty.

The court has read the abstracts with care, and they are barren of any evidence, admitted or offered for admission, showing or tending to show that when the complaint was filed and the warrant was issued and delivered to the sheriff, any person having authority to bind the state by motive or conduct, entertained or manifested any purpose other than the institution of a criminal action, to be regularly prosecuted according to law. The warden's warrant and the state warrant were issued two days apart. The parole officer, holding the warden's warrant, located the defendant at Johnson, in Stanton county, and brought about his detention at Syracuse, in Hamilton county. The sheriff, holding the state warrant, and believing he had located the defendant at Johnson, started for that place, by way of Syracuse, to make the arrest. The sheriff and the parole officer met at Syracuse. The parole officer refused to surrender the defendant, and took him to the penitentiary. The defendant testified that on this occasion the sheriff said he would do his part to bring the defendant to trial. There was a little evidence that after the defendant had been reincarcerated there was some disposition to allow him to serve out his first sentence; but there was no evidence which in the slightest degree impeached the good faith of any official in instituting or pressing the prosecution, up to the time the defendant was reduced to custody under the warden's warrant at Syracuse.

The State v. Bowman.

It follows that for all purposes of the statute of limitations the warrant was executed within about sixty days from the time it was issued.

There is nothing else of importance in the case. Rulings of the court admitting evidence complained of were correct, or are not now of consequence, or were not such as to require a reversal of the judgment. Most of the evidence excluded was properly excluded, and none of it was presented to the court in statutory form for its consideration at the hearing of the motion for a new trial. The burden of proof was not shifted to the defendant to establish the fact that the sheriff did not perform his duty in executing the warrant. The state was not required to introduce evidence on the subject because of the presumption. The defendant could do as he liked about it. He undertook to rebut the presumption, just as he undertook to contest other matters concerning which the state had made a *prima facie* case, as, for example, his presence when the crime was committed. The instruction given the jury relating to service of a second sentence after termination of liability on a former sentence, followed the statute, and was not open to the objection urged against it, because no parole can extend beyond the period of liability. The good faith of nobody but the officials prosecuting the defendant was in issue. The prison board was not on trial, and the court properly instructed the jury that whatever the reason for revoking the defendant's parole, his recommitment was not punishment for stealing the Bobbitt cattle, and should not be considered in determining his guilt or innocence. The verdict was correct in form.

The judgment of the district court is affirmed.