No. 32,478

THE STATE OF KANSAS, *Appellant*, v. R. E. FREEMAN, *Appellee*.

No. 32,479

THE STATE OF KANSAS, *Appellant*, v. MELVIN EWING, *Appellee*.

No. 32,480

THE STATE OF KANSAS, *Appellant*, v. FERN MOSER, *Appellee*.

(55 P. 2d 362)

Opinion filed March 7, 1936.

*Clarence V. Beck*, attorney general, and *Harry A. Lanning*, of Seneca, for the appellant.

*Lloyd S. Miller* and *W. E. Archer*, both of Hiawatha, for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This is a consolidated appeal of three separate criminal actions. The prosecutions were all based on the same statute (R. S. 25-1714). The appeals all raise the correctness of the ruling sustaining separate motions to quash the respective informations. The slight difference in the separate informations will be referred to

later. The motions to quash are similar and will be treated together. R. S. 25-1714 reads:

"Whoever intentionally writes, prints, posts or distributes, or causes to be written, printed, posted, or distributed, a circular or poster which is designed or tends to injure or defeat any candidate for nomination or election to any public office, by criticizing his personal character or political action, unless there appears upon such circular or poster in a conspicuous place either the names of the chairman and secretary or of two officers of the political or other organization issuing the same, or some voter who is responsible therefor, with his name and residence, and the street and number thereof, if any, shall be punished by imprisonment for not more than six months."

The information in each case was substantially the same, the only difference being that the words "write, print," were omitted in the information in cases numbers 32,479 and 32,480, and the information in case number 32,478 contained two counts, the second count being the same as the first, except that it charged R. E. Freeman caused the anonymous publication to be written, posted and distributed.

The first count of the information in case number 32,478 was and is in words and figures as follows (omitting the caption):

"I, Harry A. Lanning, the undersigned county attorney of said county, in the name and by the authority and on behalf of the state of Kansas, come now here and give the court to understand and be informed, that on the —— day of November, A. D. 1934, in said county of Nemaha and state of Kansas, one R. E. Freeman did then and there unlawfully, maliciously and intentionally write, print, post and distribute a circular or poster in words and figures as follows, to wit:

"$100.00 Short!

"Extract from a Statement on File

"Gentlemen:

"In March of 1932, we, the undersigned, went before the state highway commission, the board in assembled meeting. J. E. Wilcox introduced Mr. Lou Hilt, commissioner of Nemaha county, and others to Mr. Helvering and others of the board in assembled session. Mr. Hilt said to the board and to Mr. Helvering, 'Mr. Wilcox has been telling us up in Nemaha county what the State Highway Commission would do to help Bancroft to have a gravel road north to No. 9, a distance of 2¾ miles.'

"Mr. Helvering said to Mr. Hilt: 'Mr. Wilcox and others were before this board in our February meeting. We listened to his argument and decided that they were probably deserving of a gravel road, and I have investigated it since and find the road is badly needed. I told Mr. Wilcox then that if the road was put in condition for gravel that the state would gravel it without cost to the county. I tell you the same.'

"Then Mr. Hilt asked Mr. Helvering and the board how much gravel the state would put on to the mile. Mr. Helvering asked Mr. Buck what would be right. Mr. Buck said, '400 yards to the mile.' Mr. Helvering said, 'That's O. K.'

"I, the undersigned, was at the above meeting in March and heard the above agreements as written above, and the following-named men were also present: J. E. Wilcox, Bancroft; O. M. Wells, Bancroft; J. A. Hanks, dem. precinct com., Wetmore; J. E. Roderick, A. P. Lapham, rep. precinct com., Wetmore, Kan.; Lewis Hilt, Bern, Kan., co. commissioner.

"I, the undersigned resident and taxpayer of Nemaha county, Kansas, freely and willingly state that on November 17, 1933, the state highway commission had decided to put 400 cu. yd. of gravel per mile free of charge to the county upon the road situated on the west line of Wetmore township between Bancroft and state highway No. 9; that Lewis Hilt, county commissioner of the first district, Nemaha county, entered my office and offered to put on 300 cu. yd. of gravel per mile, but it would cost $100 cash in advance.

Signed: J. E. WILCOX.

"Subscribed and sworn to before me this 26th day of October, 1934.

A. H. FITZWATER, *Notary Public.*

"My commission expires June 9, 1937.

"We, the undersigned taxpayers of Nemaha county, Kansas, certify by our signatures that we were some of the signers of the subscription blank to raise $100 cash to meet the demand of Lewis Hilt in getting our road graveled.

J. E. WILCOX.
M. WESLEY.
NICK HENERY.
W. G. BOUSE.
W. E. GEREN.

"We, the undersigned taxpayers of Nemaha county, Kansas, certify by our signatures that on November 27, 1933, we interviewed Mr. Mills, county commissioner of Nemaha county, to ascertain why we should pay Mr. Lewis Hilt $100 cash in advance and get only 300 cu. yd. of gravel per mile, and were told by him that neither he nor the third commissioner, Mr. Kramer, knew anything about the $100 cash in advance, but they understood we were to get 400 cu. yd. of gravel per mile free of charge to the county.

J. E. WILCOX.
NICK HENERY.

"1. WHO WANTED THE $100?
"2. WHY SHOULD A PUBLIC OFFICIAL TRY TO DO THIS?
"3. DO YOU, MR. VOTER, WANT THIS TYPE OF OFFICIAL?

(This circular ordered and paid for by R. E. Freeman's friends)

which said circular or poster was designed and tended to injure and defeat one Lewis Hilt, the said Lewis Hilt then and there being a candidate for election to public office, namely, county commissioner of Nemaha county, Kansas, by criticizing his personal character and political action, without there appearing upon said circular or poster, in a conspicuous place, or any other place, either the names of the chairman and secretary or of two officers of the political or other organization issuing the same or some voter who was responsible therefor, with his name and residence all contrary . . ."

One of the grounds of the motions to quash was R. S. 25-1714

contravenes section 16 of article 2 of the constitution of the state of Kansas in that it contains more than one subject not clearly expressed in the title. R. S. 25-1714 is a part of chapter 189 of the Laws of 1913. The title of that act is:

"AN ACT relating to elections, and amending general sections 3261, 3270, 3271, 3273, of the General Statutes of 1909, and providing additional safeguards for the protection of elections, and providing penalties for the violation thereof, and repealing said general original sections 3261, 3270, 3271, 3273, of the General Statutes of 1909."

The contention is the title does not clearly express what is contained in section five of the act, which is R. S. 25-1714. The contention is not good. In the case of *Miller v. Miller*, 113 Kan. 22, 213 Pac. 634, the precise contention was made concerning a similar title. It was there said:

"Defendant also complains that the limitation of time in which to file a notice of intention to appeal is found under a subtitle, 'Divorce and Alimony,' in the code of civil procedure, and that the title to the act is not sufficiently broad. There is no merit in defendant's contention. The words 'Divorce and Alimony,' are not part of the title, but constitute a subhead. The title to the act is, 'AN ACT concerning the code of civil procedure.' The rule has been announced in many cases that section 16 of article 2 of the constitution is not to be construed in any narrow or technical spirit. It must be applied in a fair and reasonable way. It is sufficient if the title fairly indicates, in general terms, its scope and purposes. Provision of our code covering divorce and alimony is properly found in the 'act concerning the code of civil procedure.'" (p. 23.)

Were the contention of appellees sound, their motions to quash could not be sustained. The legislature of 1923 by the provisions of section 1 of chapter 144 adopted this statute, together with all other assembled sections referred to therein, under a new title, to wit: "An act relating to the Revised Statutes of 1923." That title has been held sufficient, as not containing more than one subject, and as not containing matter different from what is expressed in the title. The statute even though it had been in fact invalid, if it could have been constitutionally enacted—and there can be no question concerning that fact—was given the force of law by its adoption under the 1923 revision. In the case of *City of Wichita v. Wichita Gas Co.*, 126 Kan. 764, 271 Pac. 270, it was said:

"Another angle to this discussion is that the statute of 1921 was incorporated in the general revision of 1923, and now appears therein as R. S. 12-824. Therefore, in common with all other statutes included in that revision, it became immune to any attack based upon mere insufficiency of title, ir-

regularity in previous legislative history, and such like formal defects. (*State, ex rel., v. Davis, Governor,* 116 Kan. 663, 667, 668, 229 Pac. 757; *Kaw Valley Drainage Dist. v. Kansas City,* 119 Kan. 368, 239 Pac. 760; *Lemen v. Kansas Flour Mills Co.,* 122 Kan. 574, 253 Pac. 547.)" (p. 768. See, also, *State v. Lebow,* 128 Kan. 715, 717, 280 Pac. 773.)

It is next urged the statute violates section 11 of the Kansas bill of rights. It reads:

"The liberty of the press shall be inviolate: and all persons may freely speak, write or publish their sentiments on all subjects, being responsible for the abuse of such right; and in all civil or criminal actions for libel, the truth may be given in evidence to the jury, and if it shall appear that the alleged libelous matter was published for justifiable ends, the accused party shall be acquitted."

These actions are not libel suits. They are prosecutions dealing with *anonymous* circulars or posters. It will be observed there is nothing contained in the above paragraph of our bill of rights which denies the right to enact legislation which prohibits *anonymous* writings or publications. The obvious intent and purpose of the statute was to clearly and definitely fix the responsibility for this method of campaigning. The statute in question is indeed a wholesome one. Its beneficent purpose requires no defense. It is ardently urged the voter is entitled to know the character of a candidate for public office. That is indeed true. By the same token the voter is entitled to know who is responsible for a publication, irrespective of whether it is malicious propaganda or truth. The estimate and regard or lack of regard in which the person or persons responsible for such publication are held by the public are often as effective in determining the result of an election as the substance of what is contained in the circular concerning the candidate. The candidate in common fairness, as well as the public, is entitled to the protection contemplated by this wise legislation. There is nothing in the statute which prevents in the slightest degree any person from exercising all his constitutional rights to write or print information concerning a candidate. The statute simply requires that the responsibility for posting or distributing such information be conspicuously indicated on the circular or poster employed. The statute is not a denial of liberty. It requires only the assumption of the responsibility of liberty. Appellees' contention, therefore, in reality is a plea, not for liberty, but a plea for release from the responsibility of liberty.

We are referred by appellees to the case of *Majors v. Seaton,* 142

Kan. 274, 46 P. 2d 34, as authority for the right to criticize a candidate for public office. That case is in no sense applicable here. It was an action for libel against the publisher of a newspaper. A newspaper is neither a circular nor a poster. The responsibility for an editorial in a newspaper is fixed. The public and the candidate are fully apprised of the responsibility for its authorship. Here we are dealing with an anonymous publication, expressly prohibited by statute.

In the motions to quash it was also contended the statute violated the first amendment to the constitution of the United States. It reads:

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

The contention is unsound for a number of reasons. One, and a sufficient reason, is these prosecutions are not based on an act of congress.

Another ground of the motions to quash was the information failed to state an election was called or had at which the alleged circular was distributed. R. S. 62-1012 provides:

"Neither presumption of law nor matters of which judicial notice is taken need be stated in an indictment or information."

Courts judicially know general election laws and the dates of general elections. (23 C. J. 92.) In the early case of *Ellis v. Reddin,* 12 Kan. 306, it was said:

"Courts must judicially take notice, without allegations and without proof, that the fifth day of November, 1872, was the day on which the general election for that year was held, and that it was a day on which vacancies in a county office could have been filled by election." (Syl. ¶ 2.) (See *Wood v. Bartling,* 16 Kan. 109, 112. See, also, *State v. Henderson,* 114 Kan. 724, 725, 220 Pac. 293.)

It is further urged the information was fatally defective for the reason it did not allege the specific date on which the circular was distributed. The offense was alleged to have been committed on the ——— day of November, 1934. The offense was stated with sufficient certainty. R. S. 62-1006 reads:

"The precise time of the commission of an offense need not be stated in the indictment or information; but it is sufficient if shown to have been within the statute of limitations, except where the time is an indispensable ingredient in the offense."

Time in this case was not an indispensable ingredient of the offense. It was sufficiently alleged. (*State v. Nagley,* 8 Kan. App. 812, 57 Pac. 554; *State v. Brooks,* 33 Kan. 708, 7 Pac. 591; *State v. Allen,* 63 Kan. 598, 66 Pac. 628; *State v. Bowman,* 106 Kan. 430, 188 Pac. 242; *State v. McCarthy,* 124 Kan. 20, 22, 257 Pac. 925.)

It is finally contended the circular showed on its face who was responsible for its printing, posting and distribution. This contention cannot be sustained. The exhibit in question does not contain the name or names of officers of any political or other organization or person responsible for circularizing it, in a conspicuous place or otherwise. It purports to have been a written communication addressed to "Gentlemen," whoever the addressees may have been. It appears to have been an "extract of a signed statement *on file*" somewhere. A signed statement on file is not a circular nor a poster. It is addressed to "Gentlemen," and purports to contain the signatures of certain parties who signed the statement which was placed on file. It became neither a circular nor a poster until it was printed and posted or distributed. Until that time it was simply what the heading indicates—"extract from a statement on file." Now, who was responsible for this "extract from a statement on file," being printed, posted or distributed? What are their names, residence and street number? The circular does not divulge any of these requirements. The fact a statement on file may contain within it certain names and some signatures attached thereto, does not make it a circular or poster, nor does it fix the responsibility for having it printed, posted or distributed.

The three questions at the bottom of the circular would appear to have been added in order to make the intended application to Mr. Hilt more pointed and the criticism of his personal character or political action more effective. The responsibility of *ordering* and *paying* for the circular is then placed with "R. E. Freeman's friends." Just who one's friends may be in a political campaign is not always exactly certain. Who they were in this instance and what their residence and street number may be is not disclosed. The names of the persons responsible for the posting and distributing are likewise lacking. The circular or poster therefore clearly violates the provisions of the statute.

The judgment sustaining the motion to quash in each of the respective actions must therefore be reversed. It is so ordered.