PATROSSO, J.
 

 Defendant was convicted of violating section 28.06 of the Los Angeles Municipal Code, execution of sentence was suspended and he was placed on six months’ summary probation on the condition not to engage in similar practice.
 

 Defendant’s sole contention on appeal is that the ordinance under which he was convicted is unconstitutional because violative of the constitutional guarantee of the freedom of speech and of the press; the argument being that this necessarily includes the right of a writer to remain anonymous.
 

 The section under which defendant was charged provides: “No person shall distribute any hand-bill in any place under any circumstances, which does not have printed on the cover, or the face thereof, the name and address of the following: (a) The person who printed, wrote, compiled or manufactured the same, (b) The person who caused the same to be distributed; provided, however, that in the case of a fictitious person or club, in addition to such fictitious name, the true names and addresses of the owners, managers or agents of the person sponsoring said hand-bill shall also appear thereon. ”
 

 Freedom of speech and of the press are part of our fundamental liberties guaranteed by the First Amendment to the Constitution of the United States, and while this provision is not a restraint upon the power of the states, the states are under the same restraint by force of the due process clause of the Fourteenth Amendment.
 
 (Grosjean
 
 v.
 
 American Press Co.
 
 (1935), 297 U.S. 233, 244 [56 S.Ct. 444, 446, 80 L. Ed. 660, 665].) This freedom is also guaranteed by article I, section 9, of the California Constitution which provides that
 
 *Supp. 846
 
 “Every citizen may freely speak, write, and publish his sentiments on all subjects,
 
 being responsible for the abuse of that right
 
 (emphasis added); and no law shall be passed to restrain or abridge the liberty of speech or of the press.
 

 The “abuse” provision in the California Constitution is similarly found in the Constitutions of 43 other states (Chafee, Free Speech in the United States, p. 5, n. 2). The rest of the states have a shorter guarantee comparable to that contained in the United States Constitution in which this responsibility for abuse has been of necessity implied. (See
 
 Werner
 
 v.
 
 Southern Calif. Assoc. Newspapers
 
 (1950), 35 Cal. 2d 121, 124 [216 P.2d 825, 13 A.L.R.2d 252].)
 

 Freedom of speech and of the press implies the right freely to utter and publish whatever a citizen may please with immunity from legal censure and punishment for the publication so long as it is not harmful in its character when tested by such standards as the law affords.
 
 (People
 
 v.
 
 Osborne
 
 (1936), 17 Cal.App.2d Supp. 771, 778 [59 P.2d 1083].) The chief purpose of the constitutional guarantee is to prevent prior restraint, but it is also a positive injunction against the curtailment of the right of expression, including circulation, after it is made.
 
 (People
 
 v.
 
 Armentrout
 
 (1931), 118 Cal.App.Supp. 761, 769 [1 P.2d 556].)
 

 Neither of these freedoms is absolute, but each must be measured by the public welfare and limited by it.
 
 (Chrisman
 
 v.
 
 Culinary Workers Local No. 62
 
 (1941), 46 Cal.App. 2d 129, 132 [115 P.2d .553].) Where the rights of others are interfered with, such rights may be protected under our laws and constitutions.
 
 (People
 
 v.
 
 Northum
 
 (1940), 41 Cal.App. 2d 284, 289 [106 P.2d 433].) The guarantee of free speech does not carry with it freedom from responsibility for any abuse of that right.
 
 (Werner
 
 v.
 
 Southern Calif. Assoc. Newspapers, supra
 
 (1950), 35 Cal.2d 121, 124.)
 

 In
 
 Lewis Pub. Co.
 
 v.
 
 Morgan
 
 (1913), 229 U.S. 288 [33 S.Ct. 867, 57 L.Ed. 1190], the Supreme Court held that a statute requiring newspapers and periodicals to publish a statement of the names of the editor, publisher, owner, stockholders, principal creditors, etc., as a condition to the enjoyment of second-class mail privileges did not offend against the guaranty of freedom of the press and of speech.
 

 Our search has revealed few cases involving the right to be anonymous in what one writes or causes to be distributed. The only cases in which this precise question appears to have been raised are those dealing with the publication and dis
 
 *Supp. 847
 
 tribution of election circulars where similar requirements have been held not to be a curtailment of freedom of speech or of the press.
 
 (Commonwealth
 
 v.
 
 Evans
 
 (1944), 156 Pa. Super. 321 [40 A.2d 137];
 
 State
 
 v.
 
 Babst
 
 (1922), 104 Ohio St. 167 [135 N.E. 525];
 
 State
 
 v.
 
 Freeman
 
 (1936), 143 Kan. 315 [55 P.2d 362].)
 

 As said in
 
 Commonwealth
 
 v.
 
 Evans, supra,
 
 at page 326, “The power of the Legislature in the premises is wholly free from doubt. The section of the Bill of Rights which guarantees the ineffably precious right of literary expression does not contain one syllable which protects anonymous writers. . . . The Constitution itself imposes responsibility as a condition to the exercise of the right, and that condition empowers the legislature to enact law under which identity must be disclosed and responsibility assumed.”
 

 And in
 
 State
 
 v.
 
 Freeman, supra,
 
 at page 319: “There is nothing in the statute which prevents in the slightest degree any person from exercising his constitutional rights to write or print information concerning a candidate. The statute simply requires that the responsibility for posting or distributing such information be conspicuously indicated on the circular employed. The statute is not a denial of liberty. It requires only the assumption of responsibility for liberty. Appellee’s contention, therefore, in reality is a plea, not for liberty, but a plea for release from the responsibility of liberty.
 

 In
 
 Near
 
 v.
 
 Minnesota ex rel. Olson
 
 (1930), 283 U.S. 697, 707 [51 S.Ct. 625, 628, 75 L.Ed. 1357, 1363], the court says: “In maintaining this guaranty [liberty of the press and of speech], the authority of the State to enact laws to promote the health, safety, morals and general welfare of its people is necessarily admitted.”
 

 In the light of the foregoing, we entertain no doubt that the ordinance here in question does not offend against either the federal or state constitution, and constitutes a proper exercise of the police power. It does not prevent anyone from freely writing or distributing whatever he sees fit, regardless of its character. The only requirement is that there be indicated thereon its authorship and the identity of the person or persons causing its distribution. As we have seen, the Constitution does not guarantee immunity from responsibility for abuse of the privilege—rather the contrary. The obvious purpose and intent actuating the enactment of the ordinance requiring identification of the
 
 *Supp. 848
 
 writer and distributor was to more effectively insure that no one who abused the right should escape responsibility therefor. It not only affords an effective means whereby one who has been defamed may seek legal redress therefor, but also operates to insure the effective enforcement of penal statutes prohibiting the publication and distribution of obscene writings, which laws are clearly designed to protect the morals and promote the public welfare.
 

 Defendant asserts that such a statute necessarily operates to deter any writer who wishes to remain unknown. This may be true, but it does not serve to cast any doubt upon its validity. If he is not prepared to accept responsibility for that which he writes or distributes, he may not be heard to complain that he has been denied the constitutional right to freely write and distribute what he pleases, for the exercise of the right is necessarily conditioned upon his acceptance of responsibility therefor. And if incidentally it does act to restrain publication of libelous or obscene material, who will undertake to say that this is contrary to the public interest ? We have not heard it suggested that laws prohibiting libel are rendered unconstitutional because fear of incurring liability therefor may have the incidental effect of deterring one from publishing libelous matter.
 

 We find nothing in the authorities upon which defendant professes to rely which supports his position.
 

 The judgment is affirmed.
 

 Shaw, P. J., and Stevens, J., concurred.