## TAYLOR *v.* MISSISSIPPI.*

No. 826.   Argued April 15, 16, 1943.—Decided June 14, 1943.

*Mr. Hayden C. Covington* for appellants.

*Mr. Geo. H. Ethridge,* Assistant Attorney General of Mississippi, with whom *Mr. Greek L. Rice,* Attorney General, was on the brief, for appellee.

*Mr. Charles C. Evans* filed a brief on behalf of the American Civil Liberties Union, as *amicus curiae,* urging reversal.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

March 20, 1942, the State of Mississippi enacted a statute [1] the title of which declares that it is intended to

---

*Together with No. 827, *Benoit* v. *Mississippi,* and No. 828, *Cummings* v. *Mississippi,* also on appeals from the Supreme Court of Mississippi.

[1] Chap. 178, General Laws of Mississippi, 1942.

secure the peace and safety of the United States and of the State of Mississippi during war and to prohibit acts detrimental to public peace and safety. The first section, with which alone we are here concerned, provides:

"That any person who individually, or as a member of any organization, association, or otherwise, shall intentionally preach, teach, or disseminate any teachings, creed, theory, or set of alleged principles, orally, or by means of a phonograph or other contrivance of any kind or nature, or by any other means or method, or by the distribution of any sort of literature, or written or printed matter, designed and calculated to encourage violence, sabotage, or disloyalty to the government of the United States, or the state of Mississippi, or who by action or speech, advocates the cause of the enemies of the United States or who gives information as to the military operations, or plans of defense or military secrets of the nation or this state, by speech, letter, map or picture which would incite any sort of racial distrust, disorder, prejudices or hatreds, or which reasonably tends to create an attitude of stubborn refusal to salute, honor or respect the flag or government of the United States, or of the state of Mississippi, shall be guilty of a felony and punished by imprisonment in the state penitentiary until treaty of peace be declared by the United States but such imprisonment shall not exceed ten years."

At the June 1942 term of the Madison County Circuit Court, Taylor, the appellant in No. 826, was indicted for orally disseminating teachings designed and calculated to encourage disloyalty to the government of the United States and that of the State of Mississippi; and for orally disseminating teachings and distributing literature and printed matter reasonably tending to create an attitude of stubborn refusal to salute, honor, and respect the flag and government of the United States and of the State of

Mississippi, and designed and calculated to encourage disloyalty to the government of the United States.

At the June 1942 term of the Marion County Circuit Court, Betty Benoit, the appellant in No. 827, was indicted for disseminating and distributing literature and printed matter designed and calculated, and which reasonably tended, to create an attitude of stubborn refusal to salute, honor, and respect the flag and government of the United States.

At the July 1942 term of the Warren County Circuit Court, Cummings, the appellant in No. 828, was indicted for distributing printed matter designed and calculated to encourage disloyalty to the United States Government and to the State of Mississippi, and tending to create an attitude of stubborn refusal to salute, honor or respect the flag or the government of the United States and the State of Mississippi.

Demurrers and motions to quash, challenging the constitutional validity of the statute, were overruled. The defendants pleaded to the indictments and, after trial, were convicted. Each was sentenced to imprisonment in the state penitentiary for a term to expire at the end of the existing war, but not to exceed ten years. Appeals were perfected to the Supreme Court of Mississippi which, by an evenly divided court, affirmed the convictions.[2]

The appellants maintained below, and assert here, that their convictions denied them the rights guaranteed by the Fourteenth and First Amendments, in that, as construed and applied to them, the Act abridges freedom of press and of speech and is so vague, indefinite, and uncertain as to furnish no reasonably ascertainable standard of guilt.

The evidence was contradictory and conflicting but the juries resolved the conflicts against the appellants. We

[2] 194 Miss. 1, 59, 74; 11 So. 2d 663, 683, 689.

must, therefore, examine the questions presented on the basis of the proofs submitted by the State.

In No. 826 the prosecution offered evidence to show that Taylor, in the course of interviews with several women, the sons of two of whom had been killed in battle overseas, stated that it was wrong for our President to send our boys across in uniform to fight our enemies; that it was wrong to fight our enemies; that these boys were being shot down for no purpose at all; that the two women's sons may have thought they were doing the right thing to fight our enemies, but it was wrong; that Hitler would rule but would not have to come here to rule; that the quicker people here quit bowing down and worshiping and, saluting our flag and Government the sooner we would have peace. Books and pamphlets distributed by Taylor were placed in evidence. Certain statements in these books, said by the Supreme Court of Mississippi to be typical, are copied in the margin.[3]

---

[3] "All nations of the earth today are under the influence and control of the demons. . . . All the nations suffer the same fate or come to the same end, because all nations of earth are on the wrong side, that is, on the losing side. All of such nations are against the Theocratic Government, that is, the government of kingdom of Almighty God . . . and all are under the control of the invisible host of demons, . . ."

"But to compel people to salute a flag or any other image is wrong, and particularly if that person believes on God and Christ Jesus. For the Christian to salute a flag is in direct violation of God's specific commandment."

"Almighty God commands that they must remain entirely neutral in the controversy. Because his covenant people are servants and representatives of THE THEOCRACY they must hold themselves entirely aloof from warring factions of this world."

"Non-Christians may salute the flag without reference to the foregoing rules. Those who are real conscientious Christians are in a class entirely different from others of the world. Jehovah's witnesses are Christians and in a covenant to be entirely obedient to God's law. They must teach their children and admonish them to obey God's law, as he has commanded. They are conscientious and they sincerely be-

In No. 827 it was proved that the appellant Betty Benoit distributed Volume XXIII, No. 583, of a publication entitled "Consolation," which contained a reprint of an editorial from a Lewiston, Maine, newspaper commenting adversely upon the decision in *Minersville School District v. Gobitis*, 310 U. S. 586, and vigorously asserting that the salute of the national flag amounted to a contemptible form of primitive idol worship. The publication also contained an alleged foreign dispatch which stated that the flag salute ceremony, a daily event in French schools, originated in the Catholic schools of France; commented that the type of mind which finds satisfaction in worshiping images would also be most inclined towards various kinds of emblem worship, and added that the dispatch confirms the claim that the flag salute in the United States has been covertly pushed by the Catholic hierarchy here.

In No. 828 the State proved that the appellant Cummings distributed a book called "Children." The volume was placed in evidence. Long excerpts were read to the jury most of which seem irrelevant to the charges in the indictment. One passage, however, appears to be that on which the prosecution especially relied. It is copied in the margin.[4]

lieve that for them to indulge in the formalism or ceremony of saluting any flag is a violation of God's specific commandment. . . ."

In its opinion the court added:

"Other passages in this literature teach that 'the so-called democracies' hold out no hope of peace, security, life or happiness—that the only place of safety is in Theocracy; that if there is a conflict between state law and what Jehovah's witnesses conceive to be Jehovah's law, the state law should not be obeyed; that Jehovah's witnesses take a pledge not to salute the flag and that to undertake by law to force a child to salute the flag is to 'frame mischief by law.' "

[4] "Satan knows that his time is short, and therefore he is desperately trying to turn all persons, including the children, against God. (Revelation 12: 12, 17.) Therefore Satan influences public officials and others to compel little children to indulge in idolatrous practices by

The appellants are all members of Jehovah's Witnesses. There is nothing in the records to indicate that, in making the statements and distributing the printed matter in question, they were communicating and teaching any doctrine in which they did not sincerely believe.

Section 1 of the Act defines six offenses. The indictments in Nos. 826 and 828 charge the commission of two of them [5] in a single count,—(1) teaching and dissemination of printed matter designed and calculated to encourage disloyalty to the national and state governments, and (2) distribution of printed matter reasonably tending to create an attitude of stubborn refusal to honor or respect the flag or government of the United States or of the State of Mississippi. In No. 827 the single offense charged is the dissemination of literature reasonably tending to create the denounced attitude towards the flag and Government.

In *West Virginia State Board of Education* v. *Barnette, post,* p. 624, the court has decided that a state may not en-

bowing down to some image or thing, such as saluting flags and hailing men, and which is in direct violation of God's commandment. (Exodus 20: 1–5.) That is why in the last few years rules are made and enforced in the public schools compelling children of the Jonadabs, who are in a covenant to do God's will, to indulge in the idolatrous practice of flag-saluting and hailing men. It is the influence of that subtle foe, the Devil, that has brought about this state of affairs, and now Satan's agents cause great persecution to be brought upon the parents and the children who insist on obeying the commandments of God. This makes the way of both parents and children more difficult, but at the same time it puts a test upon them and affords them the opportunity to prove their faith and obedience and to maintain their integrity towards God and his King."

[5] There is no charge in any of the indictments of (1) preaching, teaching, dissemination of teachings, or distribution of written or printed matter designed or calculated to encourage violence or sabotage; (2) advocacy, by action or speech, of the cause of the enemies of the United States; (3) the giving of information as to military affairs; (4) incitement of racial disturbances, disorder, prejudice or hatred.

force a regulation requiring children in the public schools to salute the national emblem. The statute here in question seeks to punish as a criminal one who teaches resistance to governmental compulsion to salute. If the Fourteenth Amendment bans enforcement of the school regulation, *a fortiori* it prohibits the imposition of punishment for urging and advising that, on religious grounds, citizens refrain from saluting the flag. If the state cannot constrain one to violate his conscientious religious conviction by saluting the national emblem, then certainly it cannot punish him for imparting his views on the subject to his fellows and exhorting them to accept those views.

Inasmuch as Betty Benoit was charged only with disseminating literature reasonably tending to create an attitude of stubborn refusal to salute, honor, or respect the national and state flags and governments, her conviction denies her the liberty guaranteed by the Fourteenth Amendment. Her conviction and the convictions of Taylor and Cummings, for advocating and teaching refusal to salute the flag, cannot be sustained.

The last-mentioned appellants were also charged with oral teachings and the dissemination of literature calculated to encourage disloyalty to the state and national governments. Their convictions on this charge must also be set aside.

The statute as construed in these cases makes it a criminal offense to communicate to others views and opinions respecting governmental policies, and prophecies concerning the future of our own and other nations. As applied to the appellants, it punishes them although what they communicated is not claimed or shown to have been done with an evil or sinister purpose, to have advocated or incited subversive action against the nation or state,[6] or to have threatened any clear and present danger to our institu-

---

[6] See *Schenck* v. *United States*, 249 U. S. 47; *Abrams* v. *United States*, 250 U. S. 616; *Whitney* v. *California*, 274 U. S. 357.

tions or our Government.[7]   What these appellants communicated were their beliefs and opinions [8] concerning domestic measures and trends in national and world affairs.

Under our decisions criminal sanctions cannot be imposed for such communication.

The judgments are

*Reversed.*

---

[7] See *De Jonge* v. *Oregon,* 299 U. S. 353; *Herndon* v. *Lowry,* 301 U. S. 242.

[8] See *Stromberg* v. *California,* 283 U. S. 359; *Thornhill* v. *Alabama,* 310 U. S. 88.