## GARA v. UNITED STATES.

No. 10917.

United States Court of Appeals
Sixth Circuit.

Nov. 28, 1949.

Francis Heisler, Chicago, Ill., and Stanley U. Robinson, Jr., Columbus, Ohio (Francis Heisler, Chicago, Ill., Stanley U. Robinson, Columbus, Ohio, on the brief), for appellant.

Gerald P. Openlander, Toledo, Ohio (Don C. Miller, Cleveland, Ohio, Gerald P. Openlander, Toledo, Ohio, on the brief), for appellee.

Milton Farber, Columbus, Ohio, Harry J. Tischbein, Jr., Cincinnati, Ohio, Emanuel Redfield, New York City, for American Civil Liberties Union, amicus curiae.

Before SIMONS, ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

Appellant attacks a judgment rendered on a verdict finding him guilty under Title 50 U.S.C.A.App., § 462(a), 50 U.S.C.A.Appendix, § 462(a)[1] of knowingly counseling and aiding and abetting one Charles Ray Rickert to refuse or evade the registration required by the Selective Service Act of 1948, Title 50 U.S.C.App., § 451 et seq., 50 U.S.C.A.Appendix, § 451 et seq. Section 453, the registration section, in its material portions reads as follows: "Except as otherwise provided in this title * * *, it shall be the duty of every male citizen of the United States, and every other male person residing in the United States, who, on the day or days fixed for the first or any subsequent registration, is between the ages of eighteen and twenty-six, to present himself for and submit to registration at such time or times and place or places, and in such manner, as shall be determined by proclamation of the President and by rules and regulations prescribed hereunder."

Section 453 must be read in conjunction with § 611.6(d) of the Regulations promulgated by the President on July 20, 1948, in Executive Order 9979. The Regulation provides: "(d) The duty of every person subject to registration to present himself for and submit to registration shall continue at all times, and if for any reason any such person is not registered on the day or one of the days fixed for his registration, he shall immediately present himself for and submit to registration before the local board in the area where he happens to be."

Rickert first refused to register on September 10, 1948. On November 8, 1948 he was arrested on the campus of Bluffton College, Bluffton, Ohio, where he was a student. Appellant, dean of men at Bluffton College, had himself refused to register in the First World War and considered it his religious duty to oppose all forms of cooperation with war. He was present when Rickert was arrested. Government witnesses testified, among other things, that appellant said to Rickert at that time, "Do not let them coerce you into registering." Appellant states that he said, "do not let them coerce you into changing your conscience; your mind, it may have been; I don't know exactly." It was also shown that on November 8, 1948, appellant and his wife addressed a letter to the "Federal District Attorney" at Toledo, Ohio, which in part reads as follows: "We have just learned of the arrest of Charles Rickert, a student at Bluffton College who, as a conscientious objector to war and conscription has refused to register for the draft. We have been very much concerned about the imprisonment of young war objectors especially concerns us since we woul refuse to register for the draft if v

[1] Section 462 (a). "Any * * * person * * * who knowingly counsels, aids, or abets another to refuse or evade registration or service in the armed forces or any of the requirements of this title * * * shall, pr tion * * * be punish ment * * * or s both such * * *."

asked to do so. We have openly urged young men to take this position and shall do all in our power to further the cause of civil disobedience to conscription in this country. If men like Charles are guilty then we, too, are guilty for we have advocated disobedience to the law and have supported men who take this position."

Similar letters were addressed by appellant about this time to the Attorney General of the United States and to the District Attorney at Chicago.

Appellant also signed a pledge in 1948, stating, "I shall in every way possible assist and support Non-registrants." Evidence was presented to the effect that at a meeting held in Reading, Pennsylvania on August 25, 1948, he advocated that men of draft age refuse to register under the Selective Service Act of 1948, and later stated, "In making this speech I intended to violate the Selective Service Act."

Since Rickert, at the time of his arrest, did not in words decline to register on November 8th, it is contended that his offense was complete on September 10, 1948. Appellant therefore urges that his advice on November 8th that Rickert should not permit himself to be coerced into changing his mind, could not affect Rickert's action nor constitute a violation of the statute; that the indictment does not properly charge the offense, and that the evidence does not sustain the conviction.

■ These contentions are untenable. Rickert's failure to perform his obligation to register constituted a completed offense on September 10th, but it was repeated on every day thereafter during the period involved herein, for he was under a continuing duty to register. Regulation 611.6(d), above quoted, establishes this duty. Since § 453 authorizes the President to fix the "time or times" of registration the statute is not, as contended, enlarged by the Regu... ...ns. Section 611.6(d), since it conforms ...express provision of § 453, is valid. ...ws that Rickert on November 8, ... under the obligation to register. ...his actions, although not by ...fulfill this obligation, ...d him in so doing. ...harged the of-

fense as of that day, and the charge was proved by substantial evidence.

■ The fact that appellant sincerely believed that it was his Christian duty to oppose registration does not absolve him from his violation of the statute. The rights of religion are not beyond limitation. Davis v. Beason, 133 U.S. 333, 10 S.Ct. 299, 33 L.Ed. 637; Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645. The guaranty of freedom of religion in the Bill of Rights is not a guaranty of immunity for violation of law. Baxley v. United States, 4 Cir., 134 F.2d 937; Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244. It is to be observed that § 456(j) of the Selective Service Act makes adequate provision for the protection of persons who by reason of religious training and belief are conscientiously opposed to participation in war, in any form; but they are required to register in order to claim exemption from combat duty or from noncombatant service.

■ The District Court did not err in charging that it was immaterial whether appellant succeeded in dissuading Rickert from registering. Ever since the decision in Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470, it has been the law that where an attempt to obstruct military service, as well as actual obstruction, is penalized by statute, there is "no ground for saying that success alone warrants making the act a crime." It is immaterial, also whether appellant did or did not make a practice, as he contends, of counseling only those who were "inwardly fixed" in their conscience to refuse to register. Under § 462, the gist of the crime is the counseling, aiding or abetting the violation, and not the result.

Also the District Court properly charged that it was not necessary to prove that appellant actually brought about Rickert's violation of the statute if his words were used in such circumstances and were of such a nature that they would have a tendency to cause Rickert to refuse to register. Butler v. United States, 7 Cir., 138 F.2d 977; United States v. Pelley, 7 Cir., 132 F.2d 170, 177.

Nor do we think that appellant's argument that the Selective Service Act violates his constitutional right of free speech on the ground that it restricts freedom of speech and that there is no clear and present danger, Cf. Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, justifying such restriction, can be sustained. The cited case involved an ordinance which as construed by the trial court directly invaded freedom of speech. The Selective Service Act does not even purport to enter the field of restriction of speech or of publication. On the question whether a clear and present danger existed, requiring the enactment of the statute, the Congress is the judge. It has the obligation, under the Federal Constitution, of providing for the common defense. In the preamble to the Selective Service Act of 1948, under the congressional declaration of policy it is stated "The Congress * * * declares that an adequate armed strength must be achieved and maintained to insure the security of this Nation." We take judicial notice of the existence of the so-called "cold war" which in the view of the Congress necessitated this peacetime draft.

The vital consideration which compels us to overrule appellant's contention on this point is that § 462 forbids any person to counsel others to violate a statute which neither affects nor relates to freedom of speech or opinion. Section 453, the provision immediately involved here, simply establishes the duty of registering. It is self-evident that violation of § 462, particularly as to aiding and abetting, might be consummated without any expression of opinion. Even counseling not to register, which would constitute a verbal act, might on many occasions not involve an expression of opinion with reference to the Selective Service Act. The problem presented here arises out of the fact that appellant, in addition to counseling Rickert not to fulfill his continuing duty to register, expressed opinions as to the propriety of the law and the policy of a peacetime draft. If uttered under other circumstances these views might well have been protected by the First Amendment. Appellant could freely oppose the Selective Service Act

both in public and private, in peacetime, and in wartime, Cf. Taylor v. Mississippi, 319 U.S. 583, 63 S.Ct. 1200, 87 L.Ed. 1600, and demand its repeal. Therefore appellant contends that since his counseling of Rickert was based on conscientious opposition to the law, and expressed opinion was part of the basis of his admonition to Rickert, he can not be found guilty as charged.

It is true that the trend of former decisions penalizing opposition to policies of the Government has been greatly modified in recent years. See Gilbert v. Minnesota, 254 U.S. 325, 41 S.Ct. 125, 65 L.Ed. 287; United States v. Schwimmer, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889; Minersville School District v. Gobitis, 310 U.S. 586, 60 S.Ct. 1010, 84 L.Ed. 1375, 127 A.L.R. 1493, as compared with Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155; Taylor v. Mississippi, supra; Terminiello v. Chicago, supra; Girouard v. United States, 328 U.S. 61, 66 S.Ct. 826, 90 L.Ed. 1084. But the decisions relied on by appellant do not arise out of cases where the accused counseled others to commit violations of express law, the counseling being also expressly forbidden by statute. No decision has been handed down by the Supreme Court holding that violation of an express statute enacted by the Congress in the exercise of its constitutional power to provide for the common defense is excused under the First Amendment because the acts of violation are consummated, as counseling always must be, through the medium of words.

The case argued by appellant in many ways is based upon a different set of facts from those presented here. We do not have a mere attempt on appellant's part to comfort or give moral support to some one who is paying the penalty for his refusal to register. Here appellant admits that he agreed in every way possible to assist and support non-registrants. At an open meeting he advocated refusal to register. His repeated letters state that he counseled men of draft age to refuse registration. Such actions, if carried out extensively, might well nullify the law. Appellant may attack the Selective Service Act of 1948 from every platform in America with impunity,

but he cannot, under the guise of free speech, nullify it by disobedience to its express provisions.

We conclude that the statute is constitutional, and in this case constitutionally applied.

The judgment is affirmed.