Clifford Gerald **LEWIS**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 18721.

United States Court of Appeals Eighth Circuit.

Aug. 29, 1967.

Rehearing Denied Oct. 6, 1967.

Elmore A. Page, Tulsa, Okl., for appellant; Peter B. Bradford, Tulsa, Okl., was with him on the brief.

Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for appellee; Charles M. Conway, U. S. Atty., Fort Smith, Ark., with him on the brief.

Before VOGEL, Chief Judge, and BLACKMUN and HEANEY, Circuit Judges.

VOGEL, Chief Judge.

Clifford Gerald Lewis, the appellant, was tried before a jury and found guilty on two counts of an indictment, the first count charging him with delivering counterfeit $20 Federal Reserve Notes to Karen Kay Staires and Allen Ray Livingston in violation of 18 U.S.C.A. § 473, and the second count charging him with having aided and abetted Staires and Livingston in passing such counterfeit notes in several towns· in Arkansas, in violation of 18 U.S.C.A. § 472. A jury verdict of guilty was returned on both counts. Subsequent thereto the trial court "set aside [the] conviction on Count I, but affirmed [the] conviction

on Count II". Appellant was sentenced to seven years' confinement on Count 2. This appeal followed.

Reversal and a new trial are asked on three alleged errors: (1) Evidence adduced at trial failed to prove knowledge by appellant that the notes passed were counterfeit or that he aided or abetted the principals; (2) evidence obtained by an illegal search of appellant's automobile without a warrant and not incident to arrest should not have been admitted during the trial; (3) the failure of the trial judge to acquit appellant as to Count 1 before submitting the case to the jury was unfairly prejudicial. Finding no error, we affirm.

With reference to appellant's first contention, it is necessary to recite the government's evidence in some detail. In that regard, appellant did not testify himself and offered no testimony in his own behalf with the exception of recalling Allen Ray Livingston, a government witness, asking a few questions with reference to his appearance on June 16, 1966, the date of arrest.

The government's testimony indicated that shortly prior to June 16, 1966, Karen Staires and Allen Ray Livingston, together with the appellant, received a number of counterfeit $20 Federal Reserve Notes from an unidentified man who was not known to either Karen Staires or Allen Livingston; that the receipt of the same was in West Tulsa, Oklahoma, from which place the three began a journey to Arkansas. At the time both Karen and Allen were sixteen years of age. At no time did the appellant handle the counterfeit money but he was present at the time of its receipt and the inference is that he was the only one who knew the unidentified man and that he, the appellant, made the arrangements. Karen carried the money on her person, being told by the appellant that "they wouldn't frisk a girl". The first day took them to Fort Smith, Arkansas, where the appellant registered himself, Karen and Allen under an assumed name at a motel. Appellant apparently paid the bill for the rooms. Karen testified that her purpose in coming to Fort Smith with appellant "was to pass $20 counterfeit bills". After cashing the counterfeit bills, Karen and Allen placed the real money change left over after their small purchases in a sack in the appellant's car. After entering Arkansas, appellant changed the license plates on his car. Numerous purchases were made by Karen and Allen in towns in Arkansas. Each time they kept the articles purchased but placed the good money change in a sack in the appellant's car. At an amusement center near Hot Springs, Arkansas, Karen and Allen took a sky ride while appellant waited nearby in his automobile.

Robert W. Hill, an Arkansas State Policeman, who had been alerted by radio communication with reference to the passing of counterfeit bills, observed appellant's car parked on the west edge of Hot Springs near the amusement center. It fitted the description given him by radio. Officer Hill asked the appellant, who was sitting in the car, for identification and when the appellant failed to produce papers for the automobile, appellant was placed under arrest. Officer Hill also noticed Karen and Allen walking in the vicinity and took them into custody. Appellant's car was placed in storage overnight and searched the next day under authority of a search warrant issued with probable cause, which is not in dispute here. At the time of appellant's arrest he denied being with anyone. During the cross-examination of Karen by appellant's counsel, the following testimony was given:

"Q. Did I understand you to say Karen on direct examination that you and Allen were to have all the money that you obtained through the passing of those $20 bills?

"A. No, sir, the other part of the money was to go back to Mr. Lewis and he was to return it to the man that we met at the Hamburger stand.

"Q. Return to who?

"A. The man that we also met at the Hamburger Stand—the one that

gave us the money in Sapulpa—gave it to me.

"Q. Do you remember the name of the man that gave you the money there in Oklahoma?

"A. No, sir, I did not know him. I know nothing about him. The only one I know is Mr. Lewis.

"Q. You say he was from Sapulpa?

"A. No, sir, I don't know where he was from. I met him in Sapulpa. That is where I was given the money.

"Q. From this man?

"A. Yes.

"Q. Did you have this money with you all of the time?

"A. Yes, sir."

■■ In a criminal case, where there has been a conviction and on appeal it is claimed that the evidence was insufficient, an appellate court, in looking at the record, must take that view thereof which is most favorable to supporting the jury verdict and must accept as established all reasonable inferences that tend to support the verdict. Taylor v. State of Mississippi, 1943, 319 U.S. 583, 585–586, 63 S.Ct. 1200, 87 L.Ed. 1600; Koolish v. United States, 8 Cir., 1965, 340 F.2d 513, 519, 85 S.Ct. 1805, 14 L.Ed.2d 724; Smith v. United States, 8 Cir., 1964, 331 F.2d 265, cert. denied, 379 U.S. 824, 85 S.Ct. 49, 13 L.Ed.2d 34 (1964); Koop v. United States, 8 Cir., 1961, 296 F.2d 53. Here the evidence clearly disclosed that the appellant was present when the counterfeit bills were given by the unidentified man to Karen and the inference is that the appellant made the arrangements and, by indirection, continued to "deliver" the counterfeit notes to Karen and Allen through Arkansas. Appellant advised Karen to carry the counterfeit bills "because they wouldn't frisk a girl". The appellant owned the car and furnished the transportation for the trip, the only purpose of which seemed to have been to pass counterfeit money. Appellant apparently paid the motel bill for all three. Appellant changed the license plates on his car. He registered in the motel under an assumed name. He was in possession of the "real money" obtained by passing counterfeit $20 bills in exchange for small purchases and receiving good money in change. Clearly, the evidence was sufficient for the jury to have found knowledge and intent.

■ We find appellant's second contention that his conviction was based on the fruits of an illegal search of his automobile without a warrant and not incidental to his arrest to be equally unpersuasive. Hill, the arresting officer, denied making any search of the car at the scene of the arrest, either prior to or after the arrest of the appellant. According to the government's witnesses, appellant's automobile was stored in the Market Street Garage. Later a proper search warrant was obtained for it, the search was made and the merchandise found therein was received in evidence. Officer Hill's testimony to the effect that he did not search the car at the time of the arrest of the appellant was contested by Karen Staires, who testified:

"Q. Did you see the State Police officer drive up?

"A. No, sir.

"Q. When is the first time that you saw the Police Officers?

"A. We were up on this ride and we seen them down below, and then we seen him when he pulled up beside us and got us.

"Q. Did you see him talking to Mr. Lewis over here?

"A. Yes, sir, had him in the car with him.

"Q. Did you see him while he was talking to Mr. Lewis around his car—around the Lewis car?

"A. No, sir, he just walked away from it and got in the Police Car.

"Q. Did you see the officer do anything with the Lewis car?

"A. He got my things out of it I know, because they were in my bag.

"Q. He got your things?

"A. He went through all of my things.

"Q. Where were your things?

"A. They were still in the car, but the trunk was open and they were all out in the back end.

\* \* \* \* \* \*

"Q. Did you take them [her personal effects] with you to the jail?

"A. No, he left them in that car and closed the trunk and told Mr. Lewis to drive the car and me and Allen rode with the Highway Patrolman, whatever he is up to the jail. The things stayed in the car."

Officer Hill was thereupon recalled by the court and the following transpired:

"By the Court: Mr. Hill, I called you back just to ask you one or two questions. Did you testify just a few moments ago when you were on the stand, that you did not look into the back of the car, the turtle shell or take anything out of the car at any time.

"Witness: No, sir, I did not."

■ It is appellant's contention that Officer Hill's reply was inconsistent with his earlier testimony that he did not search the car. Obviously, Hill's reply was ambiguous. It could have meant that he did not testify earlier that he did not search or it could have meant that he did not look into the back of the car or take anything out of the car. In view of Officer Hill's repeated denials on both direct and cross-examination that he searched the car, and in view of the fact that the court did not pursue the matter further, which it undoubtedly would have had Hill's inflection or manner indicated that the first interpretation of his answer—that he did not so testify—was the correct one, we find no inconsistency. The trial judge, asking the question out of the hearing of the jury, apparently considered that there was no inconsistency in Officer Hill's testimony and his determination that there was none must stand. Findings on preliminary questions of fact concerning the existence of an illegal search are for the court rather than the jury, Ford v. United States, 1927, 273 U.S. 593, 47 S.Ct. 531, 71 L.Ed. 793, and may not be reversed on appeal if they are fairly supported by the evidence. Roberson v. United States, 6 Cir., 1948, 165 F.2d 752; Miller v. United States, 8 Cir., 1966, 354 F.2d 801, 805, 808; United States v. Vita, 2 Cir., 1961, 294 F.2d 524, 528, cert. denied 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed.2d 788; Channell v. United States, 9 Cir., 1960, 285 F.2d 217, 220. Cf., United States v. Bracer, 2 Cir., 1965, 342 F.2d 522, cert. denied 382 U.S. 954, 86 S.Ct. 427, 15 L.Ed.2d 359. The conclusion of the trial court that there was no search of the appellant's car at the time of his arrest is amply supported in the testimony and must be sustained here.

Appellant's third contention to the effect that he was prejudiced by the court's failure to dismiss Count 1 before submitting the case to the jury is also unconvincing and without merit. At the close of the government's case in chief appellant's counsel moved for dismissal of Count 1 and of Count 2. His motions were overruled. Appellant then moved for a "verdict of acquittal" in both Counts 1 and 2. Such motion was overruled. Motions as to both counts were renewed after the parties had rested. While the record indicates no particular ruling thereon, the trial court directed counsel to proceed with argument, which, in effect, was an overruling of the motions. Subsequent to the return of the guilty verdicts, appellant's counsel asked that an appeal bond be fixed and stated that he would file the appropriate motions, to which the court replied:

"The Court: You go ahead and file your motion for New Trial and I will not sentence him until after the motion has been acted upon. *There is one question that you have raised that I want to give some consideration to.*

"Mr. Page: *I understand.*" (Emphasis supplied.)

Subsequently the court set aside the conviction on Count 1 but entered judgment of conviction on Count 2.

Appellant argues that there was no evidence in the record to the effect that the appellant delivered the counterfeit notes to Karen and Allen, that the trial court should have granted his motion for judgment of acquittal and that failure to do so prejudiced the appellant by allowing both counts to go to the jury. As proof of prejudice, appellant points to the fact that the jury found guilty verdicts as to both Counts 1 and 2 and that the court, in submitting the two counts to the jury, may have indicated that the appellant might have committed not one crime but two. The argument is unpersuasive. Rule 29(b), Federal Rules of Criminal Procedure, 18 U.S.C.A., provides:

"(b) *Reservation of Decision on Motion.* If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict." As amended Feb. 28, 1966, eff. July 1, 1966.

■ While the record is not particularly satisfactory, it nevertheless is obvious that the trial court did, in accordance with the provisions of Rule 29(b), supra, reserve decision on the motion, submitted the case to the jury and then determined it after a verdict of guilty had been returned strictly in accordance with the provisions of Rule 29(b), supra. Appellant argues that there simply was no evidence to support the charge contained in Count 1 and that he was therefore severely prejudiced by the court's allowance of a Count 1 determination to go to the jury. We do not agree. There was some evidence in the record from which the jury might have inferred that the appellant knew the unidentified person who transmitted the counterfeit money to Karen, that Lewis made the arrangements and actually, but indirectly, continued to deliver the counterfeit money to Karen and Allen as the teenagers spread out from his car to make small purchases and receive good money in change which was given to appellant. This must have been on the trial court's mind when he said, after renewal of the motions, "There is one question that you have raised that I want to give some consideration to" and appellant's counsel replied, "I understand."

We are satisfied from a review of this entire record that appellant was afforded a fair trial and that his conviction was based on substantial evidence.

Affirmed.