## BAXLEY v. UNITED STATES.
### No. 5054.

Circuit Court of Appeals, Fourth Circuit.
April 2, 1943.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

William H. Smith, of Florence, S. C., for appellant.

Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C. (C. N. Sapp, U. S. Atty. of Columbia, S. C., and Ben Scott Whaley, Asst. U. S. Atty., of Charleston, S. C., on the brief), for appellee.

DOBIE, Circuit Judge.

The appellant here, John Melvin Baxley (hereinafter called Baxley), was indicted, tried, convicted and sentenced in the United States District Court, for a violation of 50 U.S.C.A. Appendix, § 311. The material part of the indictment charged that Baxley "unlawfully, knowingly and wilfully did counsel one Arthur Haselden, and his son Elbert Haselden, one Dave Donley, and his son David Donley, one Philip Spring, and divers other persons, to the grand jurors aforesaid unknown, to evade service in the

land or naval forces of the United States." Under the statute in question, it is a federal crime when anyone "knowingly counsels, aids, or abets another to evade registration or service in the land or naval forces or any of the requirements of this Act."

Baxley, on this appeal, raises three questions. He contends: (1) Under the First Amendment to the Constitution of the United States, he had a valid, unrestricted guarantee of the right to teach and preach his religion; (2) He did not "knowingly" counsel evasion of the Selective Service Act, because there was no proof that he knew of the provisions of this Act; (3) Prejudicial evidence was admitted as to his beliefs, views and practices. These contentions, which we believe to be lacking in merit, are now separately discussed.

### (1) The Constitutional Guarantee of Religious Freedom.

The First Amendment to the Constitution of the United States provides in part: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press."

Here, indeed, is a broad and fine guarantee which has been, and doubtless should be, liberally and generously interpreted by the courts. Yet it is equally clear that the rights of an individual under this Amendment are neither absolute nor limitless. Said Mr. Justice Holmes in Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470: "The most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre, and causing a panic." In Barnette v. West Virginia State Board of Education, D.C., 47 F.Supp. 251, 253, Circuit Judge Parker said:

"This does not mean, of course, that what a man may do or refrain from doing in the name of religious liberty is without limitations. He must render to Caesar the things that are Caesar's as well as to God the things that are God's. He may not refuse to bear arms or pay taxes because of religious scruples, nor may he engage in polygamy or any other practice directly hurtful to the safety, morals, health or general welfare of the community."

It is also well settled that though one is not punished in these United States for his religious views and beliefs, yet one may be punished when through external conduct these views are put into practice, if such practice is fraught with clear and present danger to the safety, morals, health or general welfare of the community, and is violative of laws enacted for their protection. Even clearer is it that one is criminally responsible who does an act which is prohibited by a valid criminal statute, though the one who does this act may do it under a deep and sincere religious belief that the doing of the act was not only his right but also his duty. Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244; Gilbert v. State of Minnesota, 254 U.S. 325, 41 S.Ct. 125, 65 L.Ed. 287; United States v. Macintosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302; City of Manchester v. Leiby, 1 Cir., 117 F.2d 661; Rase v. United States, 6 Cir., 129 F.2d 204.

So the principle set forth in these cases negatives freedom of religion as a defense for Baxley to the crime with which he is charged. He may have been, as he claims, engaged in teaching and preaching the cardinal tenets of his religion, even in fulfilling, as he saw it, the mission imposed upon him by God. But, if, as and when, by that same token, he counselled and advised others to evade service or registration in the armed forces of the United States, he thereby violated the Selective Service Act, and the First Amendment affords him no protection. This seems to be one of those situations in which an attempt to employ religion as a sword prevents its use even as a shield. In City of Manchester v. Leiby, 1 Cir., 117 F.2d 661, 666, Circuit Judge Magruder said:

"The civil authority can never concede the extreme claim that police regulations of general application not directed against any sect or creed—however widely the regulations may be accepted as being reasonable and proper—are constitutionally inapplicable to persons who sincerely believe the observance of them to be 'an insult to Almighty God.'"

### (2) Knowledge as an Element of the Crime.

There is, of course, no force in the suggestion that Baxley must have known of the definite provisions of the Selective Service Act and must have been conscious that he was violating one or more of those provisions, in order to be found guilty under the Act.

It is not even essential that Baxley should have directly and expressly urged his hear-

ers to evade service or registration, if such evasion was the normal and natural consequence of his words to those who heard and believed them. Nor will it help him to say that his primary purpose, his essential motive, was to make converts to the religious sect of which he was an ardent member, Jehovah's Witnesses.

In Abrams v. United States, 250 U.S. 616, 621, 40 S.Ct. 17, 19, 63 L.Ed. 1173, Mr. Justice Clarke aptly said: "It will not do to say, as is now argued, that the only intent of these defendants was to prevent injury to the Russian cause. Men must be held to have intended, and to be accountable for, the effects which their acts were likely to produce. Even if their primary purpose and intent was to aid the cause of the Russian Revolution, the plan of action which they adopted necessarily involved, before it could be realized, defeat of the war program of the United States, for the obvious effect of this appeal, if it should become effective, as they hoped it might, would be to persuade persons of character such as those whom they regarded themselves as addressing, not to aid government loans and not to work in ammunition factories, where their work would produce 'bullets, bayonets, cannon' and other munitions of war, the use of which would cause the 'murder' of Germans and Russians."

Circuit Judge Rogers, in Masses Pub. Co. v. Patten, 2 Cir., 246 F. 24, 38, stated: "If the natural and reasonable effect of what is said is to encourage resistance to a law, and the words are used in an endeavor to persuade to resistance, it is immaterial that the duty to resist is not mentioned, or the interest of the persons addressed in resistance is not suggested. That one may willfully obstruct the enlistment service, without advising in direct language against enlistments, and without stating that to refrain from enlistment is a duty or in one's interest, seems to us too plain for controversy. To obstruct the recruiting or enlistment service, within the meaning of the statute, it is not necessary that there should be a physical obstruction. Anything which impedes, hinders, retards, restrains, or puts an obstacle in the way of recruiting is sufficient."

And, in United States v. Nearing, D.C., 252 F. 223, 227, District Judge Learned Hand declared: "On the contrary, the rule has always been that, to establish criminal responsibility, the words uttered must amount to counsel or advice or command to commit the forbidden acts, and this is the classic form of expression. 4 Blackstone, 36, 37. Of course, the counsel or advice need not be explicit, since the meaning of words, comprises what their hearers understand them to convey. Yet the terms, 'counsel' or 'advice' have a content which can be determined objectively, and do not depend upon the subjective intent of their author."

### (3) Wrongful Admission of Prejudicial Evidence.

■ Finally, Baxley complains that he was prejudiced by evidence, which should not have been admitted, of his statements that he was opposed to war and all killing of human beings, that he would not salute the flag, that he had advised his own son not to fight or wear the uniform, that Germany was sure to win the war, that he would rather live under Hitlerism than the United States.

It is highly probable that the evidence of such statements by Baxley did place him in an unfavorable light before the jury. We think, however, that such evidence was proper and was admissible, when the District Judge carefully cautioned the jury in connection with the effect and bearing of these statements. If Baxley made these remarks, they gave a complete, rather than a partial, picture of what he actually said. There were practical difficulties involved in any endeavor to exclude, and to exclude only, evidence of these and similar statements made by him. This evidence was also germane as tending to show that such attempts as Baxley may have made to advise the evasion of the Selective Service Act were not based solely on the religious tenets that he so deeply believed and so vigorously advocated.

### In General.

This case was carefully submitted to the jury under a charge that Baxley was not to be tried for the religious views held by him and by his fellow members in the sect known as Jehovah's Witnesses. In other respects the material issues were fairly outlined to the jury, which brought in a verdict of guilty.

■ We think there was substantial evidence, adduced by many witnesses, to justify the submission of this case to the jury. Obviously, the jury believed these witnesses. A careful inspection of the record will disclose a strong corroboration and a striking cumulative effect, when the testimony of

these witnesses is compared and appraised. Accordingly, we should not disturb the verdict of the jury.

The judgment of the District Court is affirmed.

Affirmed.