159 So.2d 149

**STATE of Louisiana**

**v.**

**Warren J. MOITY.**

**No. 46708.**

Dec. 16, 1963.

Rehearing Denied Jan. 20, 1964.

Bentley G. Byrnes, Owen J. Bradley, New Orleans, Emile A. Carmouche, Jr., Crowley, for appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., J. Y. Fontenot, Acting Dist. Atty., for appellee.

FOURNET, Chief Justice.

The defendant, Warren J. Moity, having been charged in a Bill of Information with the defamation of Knowles M. Tucker, district attorney of Iberia Parish, in violation of R.S. 14:47,[1] is appealing from his conviction and sentence thereunder to pay a fine of $1,000 and costs; in default thereof, to serve 60 days in the parish jail. For the reversal of this conviction and sentence he relies on errors allegedly committed during the course of the trial to which timely objection was made, these being preserved in five Bills of Exceptions that were duly perfected.

The prosecution is predicated on Article 39 of a 106-paragraph petition filed by Moity in the Louisiana Supreme Court in which he sought a public hearing for the purpose of establishing the violation of public trust by various officials of Iberia Parish, and specifically charged that Tucker had "illegally committed to the Louisiana State Penitentiary on perjured testimony, known to Sheriff Gerard Wattigny and the District Attorney Knowles M. Tucker from the 16th Judicial District, in and for the Parish of Iberia," one Edward Adams, PMB 53003.

In a motion to quash the information the defendant contended it was fatally defective in that it (1) contains no allegations of fact that are defamatory and does not, therefore, charge a crime; (2) is based on a statement attributed to the defendant as having been made in a petition in a legal proceeding and is, therefore, qualifiedly privileged; and (3) is unconstitutional if this statement is violative of R.S. 14:47, defining the crime of defamation and fixing the penalty therefor, or is construed as coming within its scope, for this would abridge the freedom of speech guaranteed by the First Amendment to the Constitution

---

1. The pertinent portion of R.S. 14:47 provides that "Defamation is the malicious publication or expression in any manner, to anyone other than the party defamed, of anything which tends: (1) To expose any person to hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse;

or * * * injure" him "in his * * * business or occupation." It is further stipulated in this article that "Whoever commits the crime of defamation shall be fined not more than three thousand dollars, or imprisoned for not more than one year, or both."

of the United States and the prohibition therein against the passage by Congress of any statute contravening this guaranty, which prohibition extends to the State of Louisiana through the provisions of the Fourteenth Amendment to the federal constitution. When the trial judge overruled this motion, the first Bill of Exceptions was reserved.

These identical issues were urged in a similar case on appeal here, State v. Webster, 245 La. 523, 159 So.2d 140, and were there adjudicated adversely to the accused. See, also, State v. Garrison, 244 La. 787, 154 So.2d 400, and the authorities therein cited.

■ There is clearly no merit to the first contention for a mere reference to the information will disclose the defendant was charged, in language tracking the pertinent provisions of R.S. 14:47 as set out above in Footnote No. 1, with having, on or about August 25, 1962, in the Parish of Iberia, "unlawfully and maliciously" published and expressed "in writing to persons other than the party defamed," the above quoted statement from the petition filed by him in

our court. To charge a person who is, by law, sworn to prosecute all offenses and crimes occurring within his jurisdiction, as did the defendant in seeking a public hearing in that instance, with having illegally committed a person to the state penitentiary is tantamount to accusing him of malfeasance in office. To further charge this action was taken on testimony known to the prosecutor to be perjured adds to the gravity thereof. It is unquestioned such a statement would tend to expose this public official to hatred, contempt, and ridicule, as well as to deprive him of the benefit of public confidence, thus injuring him in his business and occupation—not only as a district attorney but also as a lawyer.

■■ The second ground urged as the basis for the motion to quash the information is equally without merit. As pointed out in the case of State v. Webster, supra, "the fact that the communication was qualifiedly privileged does not of itself render the information ineffective, the state having charged that the alleged libel was uttered maliciously," which, of necessity, presents a matter for determination on the merits.[2]

2. In Chapter 5 of the Louisiana Criminal Code, under the heading "Defamation," and following the definition thereof as set out under Article 47, quoted above in Footnote No. 1, follows the next article, which provides that "Where a nonprivileged defamatory publication or expression is false it is presumed to be malicious unless a justifiable motive for making it is shown," whereas if such "publication or expression is true, actual

malice must be proved in order to convict the offender." Article 48. Further, "A qualified privilege exists *and actual malice must be proved*, regardless of whether the publication is true or false, in the following situations: (1) Where the publication or expression is a fair and true report of any judicial * * * proceeding * * * (2) Where the publication or expression is a comment made in the reasonable belief of its truth

In disposing of similar charges of unconstitutionality as set out under the third contention, we recognized in the Garrison case, supra, that under decisions of the United States Supreme Court the freedoms guaranteed individuals under the First Amendment are protected under the Fourteenth Amendment from invasion by the states. See, also, State v. Cox, 245 La. 303, 158 So.2d 172.

However, these prohibitions against invasion by the states as set forth in the decisions of the highest court of our country are not so all-inclusive they cover with a protecting blanket any and all statements made or published by individuals or organizations. In the early and celebrated case of People v. Croswell, decided in 1804, where the defendant was accused of defaming the then President of the United States, Thomas Jefferson, it was pointed out that "The founders of our governments were too wise and too just ever to have intended, by the freedom of the press, a right to circulate falsehood as well as truth, or that the press should be the lawful vehicle of malicious defamation, or an engine for evil and designing men to cherish, for mischievous purposes, sedition, irreligion, and impurity. Such an abuse of the press would be incompatible with the existence and good order of civil society." 3 Johnson's cases, at page 337.

The decisions of the states, as well as of the United States Supreme Court and the recognized and renowned commentators on the source and meaning of the provisions of our federal constitution and Bill of Rights, are replete with expressions reflecting that the primary purpose for the guaranty of freedom of speech and the press in the First Amendment was to insure that *previous restraints* upon the publication of beliefs, whether spoken or written, would be prohibited—not that those disseminating them could do so with impunity and thus go unchallenged if the consequences of such publication unjustifiably damaged others. See, Patterson v. Colorado ex rel. Attorney General, 205 U.S. 454, 27 S.Ct. 556, 51 L.Ed. 879; Near v. Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357; Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470; State v. Van Wye, 136 Mo. 227, 37 S.W. 938; State v. Boyd, 86 N.J.L. 75, 91 A. 586; National Labor Relations Board v. M. E. Blatt Co., 3 Cir., 143 F.2d 268, certiorari denied 323 U.S. 774, 65 S.Ct. 135, 89 L.Ed. 619; People v. Feiner, 300 N.Y. 391, 91 N.E.2d 316, affirmed 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295; Times Film Corporation v. City of Chicago, D.C., 139 F.Supp. 837, affirmed 7 Cir., 244 F.2d

* * * (4) Where the publication or expression is made by an attorney or party in a judicial proceeding." Article 49 of the Louisiana Criminal Code. All of these articles are now incorporated in the Revised Statutes of 1950 as R.S. 14:47, 48, and 49. (The emphasis has been supplied.)

432, reversed on other grounds at 355 U.S. 35, 78 S.Ct. 115, 2 L.Ed.2d 72; Shively v. Garage Employees Local Union No. 44, 6 Wash.2d 560, 108 P.2d 354; Baxley v. United States, 4 Cir., 134 F.2d 937; 6 R.C.L. 253, Sections 239–242; 33 Am.Jur. 291, Section 308, et seq., and the authorities therein cited.

To state it succinctly as was done in State v. Van Wye, supra, "The laws punishing criminal libel have never been deemed an infringement of this constitutional guaranty." In that decision it was further pointed out that "The constitutional liberty of speech and of the press, as we understand it, simply guaranties the right to freely utter and publish whatever the citizen may desire, and to be protected in so doing, *provided, always, that such publications are not blasphemous, obscene, and scandalous in their character, so that they become an offense against the public, and, by their malice and falsehood, injuriously affect the character, reputation, or pecuniary interests of individuals. The constitutional protection shields no one from responsibility for abuse of this right.*" (The emphasis has been supplied.)

In discussing the purpose of these constitutional privileges as historically conceived and guaranteed, the United States Supreme Court, in Near v. Minnesota ex rel. Olson, supra, pointed out: "In determining the extent of the constitutional protection, it has been generally, if not universally, considered that it is the chief purpose of the guaranty *to prevent previous restraints upon publication.* The struggle in England (from which country the criminal law of Louisiana is deraigned), directed against the legislative power of the licenser, resulted in renunciation of the censorship of the press. The liberty deemed to be established was thus described by Blackstone: 'The liberty of the press is indeed essential to the nature of a free state; but this consists in laying *no previous restraints upon publication, and not in freedom from censure for criminal matter when published.* Every freeman has an undoubted right to lay what sentiments he pleases before the public; to forbid this, is to destroy the freedom of the press; but *if he publishes what is improper, mischievous, or illegal, he must take the consequence of his own temerity.*'" 283 U.S. at pages 713 and 714, 51 S.Ct. at pages 630, 75 L.Ed. 1357. (The emphasis and words within brackets have been supplied.)

It is on this theory that statutes of the various states regulating the dissemination of information—both spoken and printed, and pictures as well as words—have been held to be constitutional, and statutes denouncing libels and defamations as crimes maintained. They are considered as having been enacted under a valid exercise of the police power of the various states and not, therefore, to be an unconstitutional in-

vasion by the states of the freedoms of speech and the press as guaranteed by the First Amendment. The authorities sustaining this view are legion. See, Adams Newark Theatre Co. v. City of Newark, 22 N.J. 472, 126 A.2d 340, affirmed 354 U.S. 931, 77 S.Ct. 1395, 1 L.Ed.2d 1533, rehearing denied 355 U.S. 851, 78 S.Ct. 8, 2 L.Ed.2d 61; People v. Arnold, 127 Cal. App.2d Supp. 844, 273 P.2d 711; Taylor v. State, 194 Miss. 1, 11 So.2d 663, reversed on other grounds 319 U.S. 583, 63 S.Ct. 1200, 87 L.Ed. 1600; Gilbert v. Minnesota, 254 U.S. 325, 41 S.Ct. 125, 65 L.Ed. 287; State v. Holm, 139 Minn. 267, 166 N.W. 181, L.R.A.1918C, 304; State v. McKee, 73 Conn. 18, 46 A. 409, 49 L.R.A. 542, 84 Am. St.Rep. 124; Beauharnais v. Illinois, 72 S.Ct. 725, 343 U.S. 250, 96 L.Ed. 919; Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352; Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470, and the authorities therein cited.

■ A contrary conclusion would not only be unthinkable, but in conflict with other sacred rights guaranteed to the individual. It was never the intention of our founding fathers that each and every person would be allowed to exercise the rights guaranteed by our constitution and Bill of Rights, or any one of them, without restraint or qualification, and in utter disre-

gard of the equal rights of his fellow men; or that one person or class of persons could, by the exercise of a right, violate the equally important right of another with impunity. They intended, rather, to have these rights recognized and brought under the protection of the law in such a way as to permit man to function as a social being in a society where all rights, privileges, and duties are necessarily relative and mutual, and yet allow him the greatest freedom of action and thought. Thus, although the First Amendment declares, without qualification, that Congress shall make no law "abridging the freedom of speech, or of the press;" the courts have consistently maintained that this right to freely express one's opinions upon any subject whatsoever and without prior restraint can only be exercised with impunity so long as it does not infringe the co-existing and co-equal right of man to a good name and fame, which is as essential to his pursuit of happiness as is his right to life, liberty, and the peaceful possession of property. (See the authorities above cited.)

■ The second error alleged by the defendant to have occurred during the course of his trial is levelled at the ruling of the trial judge permitting the admission in evidence of document No. 46,339 of the Louisiana Supreme Court, despite counsel's objection it had not been identified, the sig-

nature thereon of Warren J. Moity only having been verified by the notary that witnessed his signing of the petition; further, that the offer had been prematurely made.

In overruling the objection to the admission of this document, the trial judge, in his per curiam properly disposed of the matter thusly: "The alleged defamatory statement of the defendant was made in a petition to the Supreme Court, Mr. Homer J. Hebert, a local Notary Public, had identified his signature and that of the defendant's, to the jurat accompanying the petition. The documents presented bore the certificate of the deputy clerk of the Supreme Court," certifying to the fact that the document was a correct copy of the one lodged in this court. Such legal petitions, when properly certified as being correct by the authorized court official, are admissible without further identification. R.S. 15:457. See, also, R.S. 13:3711 and Articles 251 and 1394 of the CCP.

The objection of prematurity was apparently abandoned for there is no mention of this phase of the objection in the motion for a new trial in the lower court; it is not set out in the assignments of error in this court; and it was not argued here either orally or in brief.

The next error allegedly committed —forming the basis of Bill of Exceptions No. 3—also lacks substance. In this bill counsel contends the trial judge improperly admitted in evidence over his objection judicial proceedings filed by Moity in the district court for Lafayette Parish against a broadcasting company and three individuals, as well as judicial proceedings filed by him against these same three individuals in the United States District Court for the Eastern District of Louisiana, New Orleans division, two of whom were Sheriff Gerard H. Wattigny and District Attorney Knowles M. Tucker of Iberia Parish,[3] the objection being they were irrelevant and immaterial.

This contention is without merit. As pointed out by the trial judge in his per curiam to this bill, these proceedings, when considered with the petition filed in our court and the other evidence in the record, were admissible to establish that Moity had long borne ill feeling against District Attorney Tucker, and also to show that the statement contained in Article 39 forming the basis of this action had been made by Moity with malice.

The fourth bill, levelled at questions propounded to Edward Adams (the man the district attorney is charged in Article 39 with having knowingly convicted of a crime on perjured testimony) in connection with his incarceration in a jail outside of the

---

3. It is asserted these suits were subsequently dismissed by Moity because he lacked funds with which to prosecute them.

Parish of Iberia, where the crime here charged occurred, has apparently been abandoned as it is not included as such in defense motion for a new trial nor in the assignments of error on appeal, and it was not argued in this court.

The last bill was reserved when the trial judge refused to grant the defendant a new trial, the motion therefor being predicated, in addition to the first error above disposed of, on the contention the court erred in finding him guilty since the state failed *"to prove malice and other elements of the crime charged beyond every reasonable doubt."* (The emphasis has been supplied.)

■ While in this motion defendant contended his guilt had not been proved beyond "every reasonable doubt" (thus obviously conceding there was some evidence establishing his guilt, which would have the effect of removing the matter from our review inasmuch as our jurisdiction, under the provisions of Section 10 of Article VII of the Louisiana Constitution, is limited to questions of law alone), in this court, both orally and in brief, he argues the record *is totally lacking of evidence* to establish (1) the defamation was published in Iberia Parish; (2) the accused acted without probable cause in making the averment in Paragraph No. 39 of the petition for a public hearing, which forms the basis of this charge; and (3) he was actuated by malice.

■ Our review of the record, including all of the testimony, which was attached to and made a part of this bill, unmistakably reflects there was not only some evidence to sustain the conviction and sentence of Moity, but, as pointed out by the trial judge in his written reasons for judgment and in his per curiam to this bill, it established his guilt beyond all doubt.

The opinion rendered by the trial judge is based upon the applicable statutory law, which is to the effect that for a qualified privilege to exist, requiring the state to prove actual malice motivated the publication of the defamation here involved, it must be (1) "a fair and true report of any judicial * * * proceeding;" (2) predicated upon the "reasonable belief of its truth" if made in connection with the "conduct of a person in respect to public affairs;" and (3) made by a "party in a judicial proceeding." R.S. 14:49, the pertinent portion of which is quoted above in full in Footnote No. 2.

The published defamation, as found by the trial judge, was not only not a fair and true report, but, in fact, a false statement—one of Moity's own fabrications. He advises that "The State has produced evidence to show that Edward Adams entered a plea of guilty to a charge of simple burglary in this court on March 9, 1960, and that under this plea he was sentenced to nine years in the State Penitentiary. There

was no evidence or testimony heard by the court in connection with these proceedings. The state also established that the actual prosecution of Adams was conducted by Mr. Patrick T. Caffery, an Assistant District Attorney, and that Mr. Tucker was attending a Grand Jury Session in the Parish of St. Mary on that day and was not in court."

The judge further found as a fact that Moity's statement could not be privileged or justified as a comment made in the reasonable belief of its truth for the evidence offered by him to establish this was elicited from Edward Adams, his mother, and one Oris Ardoin, who had been jointly charged with Adams, they both pleading guilty and receiving similar sentences. He states: "The substance of the testimony of these witnesses is that the mother told the defendant shortly after her son was sentenced that *the District Attorney had advised her shortly before the sentence to tell her son not to plead guilty if he was not guilty;* that she encountered her son who was being brought to court to plead and *that she so informed him.* The son *nevertheless pleaded guilty* because he said that he had been promised by *the Sheriff and one of his deputies* that he would receive a suspended sentence if he entered a plea of guilty. The son said that he wrote a letter shortly after he was at Angola to the defendant claiming that he was innocent." (The emphasis has been supplied.)

Clearly this testimony could not form the basis for any reasonable belief on the part of Moity that the charges he made against the district attorney in his petition in this court for a public hearing were true. Moreover, as observed by the trial judge, Moity made no effort to ascertain the truth of these charges in any manner whatsoever. Although he made one or more trips to Angola to speak to Adams and others personally, had the defendant actually been interested in ascertaining the truth about the Adams conviction, he could have secured this by simply dropping by the office of the clerk of the district court in the courthouse in the town in which he lived, and there have learned with little effort that it was not Tucker who had prosecuted Adams but one of his assistants; further, that no testimony at all had been received at the trial since Adams voluntarily entered a plea of guilty.

In disposing of the contention that this published defamation was privileged because made in a judicial proceeding, the trial judge pointed out that Moity *obviously* filed in the Louisiana Supreme Court (that was clearly without jurisdiction in the matter) the lengthy petition consisting of 106 articles, and in which he recklessly, viciously, and venomously charged election fraud, collusion in the misuse of public money, brutality of citizens, and lawlessness against various officials of Iberia Parish, both elected and appointed, District At-

torney Tucker being one, all for the deliberate purpose of giving it wide publicity. Moity himself, in a certificate appended thereto, asserted he had personally served copies of this petition on some fourteen named individuals, many of whom were residents of Iberia Parish. In addition, the matter received wide publicity throughout the parish through the local radio station, that had been furnished with a copy, and was discussed at length by an organization of local ministers, who were in possession of a copy too. Moity did not, by the mere filing of this petition in our court in Orleans Parish, become privileged to have it published elsewhere. Furthermore, the law does not sanction the publication of false statements maliciously, and all the more particularly when they tend to expose a person to hatred, contempt, and ridicule, as well as deprive him of the benefit of public confidence and injure him in his business or occupation.

For the reasons assigned, the conviction and sentence are affirmed.