HAMITER, Justice.
Mrs. Douglas Webster was charged in a bill of information with having committed criminal defamation against Knowles M. Tucker, the District Attorney in and for Iberia Parish, in violation of LRS 14:47. Convicted, and sentenced to pay a fine of $1,000 or (in default of the payment of the fine) to serve sixty days in the parish jail, she has appealed and relies on ten bills of exceptions to obtain a reversal.
.The basis of the charge is a letter which the accused had written to Robert Kennedy, the Attorney General of the United States, wherein she complained of open lawlessness (gambling, prostitution, teen-age drinking and narcotic peddling) in the Parish of Iberia and of collusion among public officials of that governmental subdivision. Specifically, therein, she described an interview with the district attorney (Knowles M. Tucker, stating in part the following: “At the close of the interview, I told him I had talked to men who stated they had paid him for protection while operating a house of prostitution. He, Mr. Tucker, was to notify *142 them of a raid so they could be closed. Because of danger to them from either the Sheriff or the Syndicate, I refused to give him their names. At this he flew into a rage, called me a very poor citizen, made several other insulting remarks and ordered me out of his office.”
Relying on this quotation, and including it in the bill of information, the state (represented by a district attorney appointed from another judicial district) charged that the accused had issued the letter maliciously and that she had sent copies thereof to various state and federal officials and to certain specified news media, including an Iberia Parish newspaper.
Defending, the accused claimed the qualified privilege provided for in LRS 14:49 which, among other things, recites: “A qualified privilege exists and actual malice must be proved, regardless of whether the publication is true or false, in the following situations:
“ ijc * * * * *
“(2) Where the publication or expression is a comment made in the reasonable belief of its truth, upon,
“(a) The conduct of a person in respect to public affairs; * * (Italics ours)
After having examined the record and the bills perfected, we have concluded that the conviction and sentence must be set aside and a new trial (as prayed for) granted, because of the exclusion of certain evidence during the course of the trial. Before discussing this phase of the case, however, we shall pass upon the accused’s demurrer and motion to quash which were overruled and have been reurged on appeal.
In her brief to this court the accused contends that such pleadings were improperly overruled, she stating: “The Court erred in overruling the Demurrer and Motion to Quash for the reason that the Bill of Information does not set out facts that would be a basis for a charge under revised statute 14:47; that said charge violated the First Amendment of the Constitution of the United States prohibiting abridgement of freedom of speech as the said amendment is made applicable to the State of Louisiana through the Fourteenth Amendment of the United States Constitution; that the communication to Robert Kennedy was privileged.”
There is no merit in any of these contentions. Firstly, the information charges that the defendant maliciously published the statement quoted above, i. e., that she had been told that persons had paid the district attorney for protection while operating houses of prostitution and that he was to notify the operators of raids so they could be closed. Clearly, such language is defamatory, and every element of the crime as defined by the statute has been alleged. As to the second contention the accused, relying on Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364, 8 L.Ed.2d 569, asserts that she was fully protected in making the statement by the First and Fourteenth Amendments of the United States Constitution. The same ground was urged (and more fully briefed) in State v. Garrison, 244 La. 787, 154 So.2d 400, and there it was rejected. Incidentally, the pertinent portion of that decision has since been reviewed, and we adhere to the views expressed in it. Thirdly, the fact that the communication was qualifiedly privileged does not of itself render the information ineffective, the state having charged that the alleged libel was uttered maliciously.
The demurrer and motion to quash were, therefore, properly overruled.
In her motion for a new trial, to the overruling of which a bill was reserved, the accused alleged that the “ * * * Court was in error in preventing defendant to introduce evidence in an effort to show that she had reason to believe that there was open gambling and prostitution in Iberia Parish.” During the course of the trial she had preserved her right to raise this question in such motion by numerous bills taken to the *143 court’s refusal to permit her to show by the testimony of certain witnesses that there were open law violations in various places of business in the parish.
In refusing to permit such testimony the judge had ruled that it was irrelevant until such time as the accused had made proof of the alleged bribe. Thus, in his per curi-am to bill Number 9 (which was written to be applicable to bills Numbers 3 through 9) he stated: “ * * * I ruled * * * that if and when a prima facie case of public bribery involving the District Attorney was made, I would allow the introduction of evidence of the existence of houses of prostitution to corroborate the truth of the statement. But the defense made no effort to show the truth of the defamatory statement.
“I believe this ruling to be proper for if there were houses of prostitution in operation, it could be suspected that the operators of them could have been bribing the District Attorney. If there were no such houses then this possibility would not exist. The mere showing of the existence of such houses does not imply that they are operating through bribery of the District Attorney. When no evidence of bribery was introduced, this evidence therefore became irrelevant and immaterial.”
In our opinion the evidence should have been received. Undoubtedly, the qualified privilege provided for in LRS 14:49(2) (a) (quoted above) obtains in the instant matter, for the publication falls squarely within the language of that section. And under the protection of such privilege the .defendant cannot be convicted of defamation unless her writing was actually malicious, regardless of whether it was true or false. Therefore, only proof of malice ■could have counteracted the privilege.
As we noted in State v. Garrison, supra, malice involves intent, and such intent may be inferred by circumstances connected with or surrounding the transaction. Just as the state may show a malicious intent by extrinsic evidence so, too, a defendant must be permitted to introduce evidence of that nature to negative a malicious motive; that is, he may show circumstances from which a judge or jury might conclude that the utterance was made in the reasonable belief of its truth.
To require a defendant to prove the truth of an utterance before permitting him to introduce evidence of circumstances which would refute the state’s proof of malicious intent would be to destroy the privilege entirely and, in effect, wipe out the aforementioned provisions of LRS 14:49. Hence, it follows that the court erred in holding that the testimony was admissible only to corroborate direct evidence of the truth of the defamatory .statement. In other words, inasmuch as the statement was privileged the defendant was not required to show its truth; she had only to rebut the state’s proof of malice in its utterance.
Consequently, the testimony sought to be introduced by this accused was relevant to the question of whether or not she acted maliciously in publishing the remarks which formed the basis of the charge against her. In fact, its possible effect was recognized by the district judge himself when he conceded that “ * * * if there were houses of prostitution in operation, it could be suspected that the operators of them could have been bribing the District Attorney. If there were no such houses then this possibility would not exist.”
Particularly was such evidence pertinent as to the defendant’s intent and motive when taken in connection with the undisputed facts that she had been told by one Kern Bourque that he had paid an investigator from the district attorney’s (Mr. Tucker’s) office for protection in operating a house of prostitution and that she had a tape recording of the conversation.
In this connection it is interesting to note that the district attorney (Mr. Tucker) testified that Bourque had apparently sought to pay money to his investigator (the sum of $50 was found on the seat of the latter’s au *144 tomobile in which Bourque had been a passenger some twelve hours before), the payment having grown out of an investigation by him (Mr. Tucker) to obtain evidence regarding bribery. However, no charge of attempted bribery was ever made against Bourque, because the district attorney (after listening to taped recordings of the transactions) felt that his investigator had “overplayed our hand a little bit and had possibly partially entrapped Bourque in the situation.”
Furthermore, we think that the failure of the judge to admit the discussed evidence offered by the defendant, and to take it into consideration in reaching his decision, was prejudicial; for, although the judge undoubtedly concluded (on the basis of the evidence before him) that the statement was made maliciously, it is obvious from the observations in his written “Reasons for Verdict” that such decision was a close one. Thus, he stated: “I must also comment that I agree with the argument of the District Attorney and Mrs. Webster’s able counsel that she was very truthful on the witness stand but I must say that I entertain in my mind grounds to question only one of her statements, and that is that she did not send her statement for publication to these news media because she was angry at the treatment she received from the District Attorney. It appears possible and perhaps probable that her motive at that time, because of her frame of mind, was not strictly and entirely to suppress lawlessness but it could have been in some respect to wreak vengeance, you might put it, or to satisfy a similar frame of mind.” If this defendant had been permitted to show the existence of open lawlessness in the parish we are inclined to the belief that the testimony might have changed the judge’s decision and caused him to find her not guilty.
Accordingly, our conclusion is that the accused is entitled to a new trial; and that in it she should be permitted to introduce evidence to establish facts (particularly as to the asserted acts of open lawlessness in Iberia Parish) which would tend to explain her motive or intent in issuing the statement which forms the basis of the charge against her, regardless of the truth or falsity of the publication.
For the reasons assigned the conviction and sentence appealed from are annulled and set aside and the cause is remanded to the district court for a new trial.