277 So.2d 660 (1972)
STATE of Louisiana
v.
John K. SNYDER.
No. 51762.
Supreme Court of Louisiana.
December 11, 1972.
On Rehearing May 7, 1973.
*661 William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., James D. Davis, Dist. Atty., Ad Hoc, for plaintiff-appellant.
J. Minos Simon, Lafayette, for defendant-appellee.
SANDERS, Justice.
Following a heated mayoralty election in the City of Alexandria, the Grand Jury of Rapides Parish returned ten indictments against John K. Snyder, a defeated candidate. One of the indictments was for perjury, and the remaining indictments were for criminal defamation of various persons.
After the indictments were returned, the District Attorney, who had participated in the election, recused himself. The trial judge then appointed James D. Davis, an attorney practicing in Alexandria, as district attorney ad hoc.
The district attorney ad hoc dismissed the indictments and filed bills of information containing the same charges.
The defendant filed motions for a bill of particulars in all cases, to which the district attorney ad hoc responded supplying additional information.
The defendant then filed a motion to quash in each case. At the hearing on the motions to quash, the trial judge allowed the introduction of evidence.
Assigning written reasons, the trial judge sustained all motions to quash and discharged the defendant. The State has appealed, relying upon five bills of exceptions. Because of our conclusions as to Bill of Exceptions Nos. 1, 2, 4 and 5, Bill of Exceptions No. 3, relating to the calling of the district attorney ad hoc as a witness, does not require our attention.
The trial judge held that the district attorney was without authority to recuse himself, that the district attorney ad hoc was therefore improvidently appointed, that the district attorney ad hoc had no authority to nolle prosse the indictments and file bills of information, that the evidence taken at the hearing established that the subjects of the alleged defamation were public figures and that the defamation statute was unconstitutional as applied to *662 public figures. Moreover, the court held that the bills of information were insufficient to charge defamation against public figures.
As to the perjury charge, relying upon evidence received on the motion to quash, the trial judge found that no formal oath had been administered to the defendant before he signed the allegedly false statements. Hence, he concluded that no crime had been committed and sustained the motion to quash.
The grounds for a motion to quash a bill of information are set forth in Article 532 of the Louisiana Code of Criminal Procedure. Pertinent here is Subparagraph 5 that refers to Article 485.
Article 485 provides:
"If it appears from the bill of particulars furnished under Article 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured. The defect will be cured if the district attorney furnishes, within a period fixed by the court and not to exceed three days from the order, another bill of particulars which either by itself or together with any particulars appearing in the indictment so states the particulars as to make it appear that the offense charged was committed by the defendant, or that there is no ground for quashing the indictment, as the case may be."
Taken together, the codal articles mean that when a motion to quash is based upon the ground that the offense charged was not committed, the trial judge is restricted to a consideration of the bill of information as explained or limited by the bill of particulars. They permit no preliminary examination of guilt by the reception of evidence on the motion to quash.
We hold, therefore, that it was error in the perjury case to quash the indictment on the ground that the evidence disclosed that no offense had been committed.
As we have noted, the trial judge also received evidence on the motions to quash the defamation charges, that the subjects of the alleged defamation were public figures for the purpose of determining whether the constitutional privilege applied. The existence of the privilege is a matter of defense. See State v. Garrison, 244 La. 787, 154 So.2d 400 (1963), reversed on other grounds, Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). Hence, the evidence was improperly received on the motion to quash.
These holdings, however, do not end our consideration of this appeal. Remaining for consideration is the recusal of the district attorney, the authority of the district attorney ad hoc to nolle prosse the indictments and file the bills of information, the constitutionality of the defamation statute, and the adequacy of the bills of information charging defamation.
Article 680 of the Louisiana Code of Criminal Procedure provides that a district attorney shall be recused when he has a "personal interest in the cause which is in conflict with a fair and impartial administration of justice."
Article 681 provides that a district attorney may recuse himself, whether a motion for his recusation has been filed or not, in any case in which a ground for recusation exists.
In State v. Snyder, 256 La. 601, 237 So. 2d 392 (1970), we addressed the question as to whether or not the District Attorney of Rapides Parish should be recused in the perjury case, as originally charged, because of his participation in the mayorality election.

*663 We held:
"The district attorney repeated this statement during his oral argument and, while we do not doubt that he is sincere in his belief that he has banished the personal animosity he harbored toward relator during the campaign, we do not believe that, under the circumstances presented, it would serve the public interest for him to remain in the case as prosecutor. For, after all, while he may believe that his personal animosity has subsided or eroded, still, where such deep-seated hatred has once evinced itself, the district attorney might, even though unconsciously, have impaired his power to conduct relator's trial fairly and impartially. We therefore hold that the district attorney should be recused in the case." The same considerations that moved us to recuse the district attorney in that case are present here. Hence, it was entirely proper for the district attorney to recuse himself in the present case.
Since the district attorney was properly recused, the appointment of a district attorney ad hoc was authorized. See LSA-C.Cr.P. Art. 682.
The defendant strenuously contends, however, and the trial judge so held, that the district attorney ad hoc had no authority to nolle prosse the indictments and substitute bills of information.
Article 682 of the Louisiana Code of Criminal Procedure contains a succinct statement of the powers of the district attorney ad hoc:
"The district attorney ad hoc shall have all powers of the recused district attorney with reference to the case."
The defendant would give the words with reference to the case a restricted meaning. He equates case with the document that sets forth an indictment. Hence, he reasons that after the indictments were nolle prossed, the district attorney ad hoc had no authority to substitute bills of information.
We reject this narrow construction. The bills of information contained the same charges as the indictments. Obviously, the district attorney ad hoc undertook to remove any doubt concerning the validity of the indictments, which were returned while the recused district attorney was serving as advisor to the Grand Jury. The filing was curative only, and did not convert the prosecutions into new and different cases within the contemplation of the law.
This case is to be distinguished from State v. Garrison, 260 La. 126, 255 So.2d 352 (1971). There the original indictments against the defendant were for public bribery and gambling. After the district attorney ad hoc was appointed, he dismissed the original charges and filed a bill of information charging malfeasance in office. The trial judge quashed the bill of information, holding that the district attorney ad hoc had no authority to file new and entirely different charges against the defendant.
In denying a writ, we stated in the Per Curiam:
"The ruling of the trial judge is correct. A district attorney ad hoc has no authority to institute a new and different criminal prosecution against the defendant. Both Article 682 of the Louisiana Code of Criminal Procedure and the order of appointment are explicit on this point. Article 682 restricts the powers of the district attorney ad hoc to the cases in which he was appointed. The order of appointment provides: `. . . the said appointee shall act as district attorney ad hoc, in and for the parish of Orleans, with reference to these cases only . . .'"

We hold, therefore, that the bills of information were properly filed.
*664 In his motions to quash, the defendant attacked the constitutionality of LSA-R.S. 14:47, the defamation article.
That article provides:
"Defamation is the malicious publication or expression in any manner, to anyone other than the party defamed, of anything which tends:
"(1) To expose any person to hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse; or
"(2) To expose the memory of one deceased to hatred, contempt, or ridicule; or
"(3) To injure any person, corporation, or association of persons in his or their business or occupation.
"Whoever commits the crime of defamation shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both."
Three succeeding articles deal with privilege.
Defendant's contention is that this article is unconstitutional, because it does not set forth the various constitutional requirements announced in recent decisions of the United States Supreme Court. Specifically, defendant alleges that when the subject is a public figure there is no requirement of actual malice, that is, that the defendant knew that the statement was false or made it with a reckless disregard of whether it was false or not.
The constitutional privilege was first announced in the landmark case of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), as to publications concerning public officials. There the United States Supreme Court stated:
"The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with `actual malice'that is, with knowledge that it was false or with reckless disregard of whether it was false or not."
In 1967, the United States Supreme Court extended the constitutional privilege to publications concerning public figures. Thus, those who thrust themselves into the public limelight have no redress for defamation without proof of actual malice. See Curtis Publishing Co. v. Butts (Associated Press v. Walker), 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Walker v. Associated Press, 251 La. 772, 206 So.2d 489 (1968).
In 1971, the United States Supreme Court handed down its decision in Rosenbloom v. Metromedia, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), extending the constitutional privilege to publications about a private individual's involvement in an event or issue of wide public interest, though the individual is neither a public official nor a public figure.
It is true that the statute does not set forth the above standards in express language. However, we have often adapted our statutes to federal constitutional requirements. See State v. Eros Cinema, Inc., 262 La. 706, 264 So.2d 615 (1972); Levy v. State, Char. Hosp. of La. at N. Orleans Bd. of Ad., 253 La. 73, 216 So.2d 818 (1968); State v. Rideau, 246 La. 451, 165 So.2d 282 (1964).
In Snyder v. Ware, 314 F.Supp. 335 (D. C.1970), affirmed, 397 U.S. 589, 90 S.Ct. 1355, 25 L.Ed.2d 595 (1970), the United States District Court dealt with the indentical question in a related case. The Court stated:
"We find that the Louisiana statutory provisions in question are not unconstitutional per se, but that they may be susceptible of a limiting construction, in accordance with the holding of New York Times, Garrison, and Moity, supra."
*665 We hold that the constitutional privilege relating to public officials, public figures, and private individuals' involvement in an event or issue of wide public interest as announced in the cited decisions of the United States Supreme Court is part of the Louisiana defamation statute. In short, a charge of defamation is well founded as to these subjects only when the statement was made with actual malice, that is, with knowledge that it was false or with reckless disregard of whether it was false or not.
The bills of information charge wilful, unlawful, and malicious defamation. The State's bill of particulars in each case adopts the above standards.
We conclude that neither the statute nor the bills of information are deficient.
For the reasons assigned, the judgment of the trial court sustaining the motions to quash is reversed, the motions are overruled, and the cases are remanded for further proceedings according to law and consistent with the views herein expressed.
BARHAM, J., dissents with reasons.
BARHAM, Justice (dissenting).
I am of the opinion that the defendant's attack upon the constitutionality of Louisiana's criminal statutes defining and punishing defamation is well founded. R.S. 14:47, 48, and 49 do not provide that truth is a defense to defamation even where the remarks were addressed to public figures or to private individuals involved in public matters. I am of the opinion that the majority has too loosely construed the United States Supreme Court's expressions in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964). In the latter case the United States Supreme Court found expressly that our defamation statutes were not designed as a "clear-and-present-danger" standard. Its findings were based upon the statutes themselves and our court's holding in the affirmation of the conviction in State v. Garrison, 244 La. 787, 154 So.2d 400 (1963). We said in State v. Garrison, supra, at p. 833, 154 So. 2d at p. 416: "* * * It is unnecessary for us to consider the issues behind the phrase `Clear and Present Danger'. * * *" Therefore, if our statutes are not, as they have authoritatively been held by this court, designed to prevent breaches of the peace in response to speech, they are designed solely to prevent malicious expression. Truth is not a defense at common law, but under New York Times Co. v. Sullivan, supra, and under Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), truth has been made an absolute defense where the expression concerns a public official or a public figure or even a private individual involved in matters of public interest.
I am of the opinion that when the clear-and-present-danger standard is eliminated from our statutes, the First Amendment of the United States Constitution would demand that truth afford a defense even in an expression or publication concerning private individuals in connection with private interests which are of no public concern.
For the purpose of holding our statutes constitutional where the expression may involve a public figure, the majority here has defined an expression with "actual malice" as a statement made with knowledge that it "was false or made * * * with a reckless disregard of whether it was false or not". I do not accept this definition of actual malice under our statutes, for R.S. 14:48 expressly states in part: "Where such a publication or expression is true, actual malice must be proved in order to convict the offender." (Emphasis supplied.) "Actual malice", among other things, means "hatred, ill will or enmity or a wanton desire to injure". See State v. Garrison, supra.
*666 Our criminal sanction here is against "malicious publication or expression". Our Constitution Article XIX, Section 9, provides: "In all proceedings or indictments for libel, the truth thereof may be given in evidence. * * *" I am of the opinion that we need not consider whether the person allegedly defamed here is a public officer, a public figure, or an individual involved in a matter of public concern. Under United States Constitution, First Amendment, and under Louisiana Constitution Article I, Section 3, and Article XIX, Section 9, our Revised Statutes 14:47, 48, and 49 are unconstitutional in failing to provide that truth is a defense to a charge of defamation. I therefore believe the motion to quash the indictment was good, and I would affirm the trial court's holding.

ON REHEARING
BARHAM, Justice.
After reconsideration of the issues involved in this case, we reaffirm our holding on original hearing that the trial court erred when it sustained the motion to quash the bill of information charging the defendant with perjury. This leaves for our determination the validity of the 10 bills of information charging him with criminal defamation.
In his motions to quash the defendant alleged that these bills of information were defective in that they do "not state or allege an expression or publication or a conduct or speech denounced, proscribed or made a crime by any of the valid statutes of the State of Louisiana". This attack is levelled at our criminal defamation statutes, R.S. 14:47, 48, and 49. The majority on first hearing accepted the fact that the subject of the alleged defamatory remarks was a "public figure", and the 10 bills of information filed by the State clearly demonstrate that the crimes charged arose out of comments made against a "public figure". As stated on first hearing, the allegedly defamatory remarks were made during a heated mayoralty election by the defendant, a defeated candidate, against another candidate. The question for our decision is the constitutionality of the Louisiana defamation statutes as they are applied to public officers, public figures, or private individuals involved in public matters.
In Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), an indepth study was made by the United States Supreme Court of our criminal defamation statutes as well as their application to "public officials". The principles enunciated in Garrison were expanded by later decisions to include, in addition to public officials, public figures and even private individuals who were involved in matters of public interest. See Curtis Publishing Company v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed. 2d 1094 (1967); Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971). Garrison v. Louisiana, supra, was founded upon the rule announced in New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The United States Supreme Court in Garrison stated:
"* * * The New York Times rule is not rendered inapplicable merely because an official's private reputation, as well as his public reputation, is harmed. The public-official rule protects the paramount public interest in a free flow of information to the people concerning public officials, their servants. To this end, anything which might touch on an official's fitness for office is relevant. Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character. * * *"
The situation presented here comes squarely within the holding of the United States Supreme Court in New York Times Company v. Sullivan and Garrison v. Louisiana, both cited above, and their progeny. The court in Garrison, relying upon the *667 Louisiana Supreme Court's interpretation of our defamation statutes, found that they were not designed as "clear and present danger" standards. These statutes by their own expression, by our application and interpretation, and by the United States Supreme Court's interpretation are thus in no wise designed to prevent breaches of the peace in response to expressions which constitute "fighting words". See Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed. 2d 408 (1972); Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).
At common law truth was not a defense in the crime of defamation. Under our statutes truth is not a defense to the crime of defamation. However, the United States Supreme Court decisions cited above have made truth an absolute defense where the expression alleged to be defamatory concerns a public official or a public figure or anyone involved in matters of public interest. In unequivocal language the United States Supreme Court in Garrison v. Louisiana declared our statutory scheme for control of defamatory expression unconstitutional. It stated:
"Applying the principles of the New York Times case, we hold that the Louisiana statute, as authoritatively interpreted by the Supreme Court of Louisiana, incorporates constitutionally invalid standards in the context of criticism of the official conduct of public officials. For, contrary to the New York Times rule, which absolutely prohibits punishment of truthful criticism, the statute directs punishment for true statements made with `actual malice,' see LSA-R.S. § 14:48; State v. Cox, 246 La. 748, 756, 167 So.2d 352, 355 (1964), handed down after the New York Times decision; Bennett, The Louisiana Criminal Code, 5 La.L.Rev. 6, 34 (1942). And `actual malice' is defined in the decisions below to mean `hatred, ill will or enmity or a wanton desire to injure . . .' 244 La., at 851, 154 So.2d, at 423 [State v. Garrison, 244 La. 787, 154 So.2d 400 (1963)]. The statute is also unconstitutional as interpreted to cover false statements against public officials. The New York Times standard forbids the punishment of false statements, unless made with knowledge of their falsity or in reckless disregard of whether they are true or false. But the Louisiana statute punishes false statements without regard to that test if made with ill-will; even if ill-will is not established, a false statement concerning public officials can be punished if not made in the reasonable belief of its truth. * * *" (Emphasis here and elsewhere has been supplied.)
That court then went on to state that the standard which our court applies, the "reasonable belief of its truth" (our exact statutory language), is not the same as the "reckless disregard of truth" standard applied to false statements.
Our statutes, R.S. 14:47-49, are not vague and ambiguous. They have not been interpreted to be vague and ambiguous by our court. There is no room for interpretation when the language of the statute is clear and unambiguous. We cannot cure overbreadth of our statute which makes them unconstitutional on a pretext of interpretation of ambiguous language. The statutes read:
"§ 47. Defamation
"Defamation is the malicious publication or expression in any manner, to anyone other than the party defamed, of anything which tends:
"(1) To expose any person to hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse; or
"(2) To expose the memory of one deceased to hatred, contempt, or ridicule; or
"(3) To injure any person, corporation, or association of persons in his or their business or occupation.
*668 "Whoever commits the crime of defamation shall be fined not more than five hundred dollars, or imprisoned for not more than six months, or both."[1]
"§ 48. Presumption of malice
"Where a non-privileged defamatory publication or expression is false it is presumed to be malicious unless a justifiable motive for making it is shown.
"Where such a publication or expression is true, actual malice must be proved in order to convict the offender."
"§ 49. Qualified privilege
"A qualified privilege exists and actual malice must be proved, regardless of whether the publication is true or false, in the following situations:
"(1) Where the publication or expression is a fair and true report of any judicial, legislative, or other public or official proceeding, or of any statement, speech, argument, or debate in the course of the same.
"(2) Where the publication or expression is a comment made in the reasonable belief of its truth, upon,
"(a) The conduct of a person in respect to public affairs; or
"(b) A thing which the proprietor thereof offers or explains to the public.
"(3) Where the publication or expression is made to a person interested in the communication, by one who is also interested or who stands in such a relation to the former as to afford a reasonable ground for supposing his motive innocent.
"(4) Where the publication or expression is made by an attorney or party in a judicial proceeding."
It is clear from a reading of these statutes that truth is not a defense to the charge of defamation in Louisiana.[2] When a statute is clear and unambiguous but unconstitutional in being so broad as to infringe upon constitutional rights guaranteed by the First Amendment, we cannot distort the clear expression of the Legislature by redrafting the statute to eradicate its overbroad application. It is for the Legislature to correct such a constitutional infirmity.
We hold R.S. 14:47, 48, and 49 to be unconstitutional insofar as they attempt to punish public expression and publication concerning public officials, public figures, and private individuals who are engaged in public affairs.
The motions to quash the bills of information charging the defendant with criminal defamation are good.
For the reasons assigned on original hearing, the judgment of the trial court sustaining the motion to quash in State v. Snyder, Criminal No. 93985, is reversed, and that case is remanded for further proceedings according to law and consistent with the views there expressed. For the reasons here assigned, the judgments of the trial court sustaining the motions to quash the bills of information in State v. Snyder, Criminal Nos. 93975 to and inclusive of 93984, are affirmed, and the defendant is discharged.
SANDERS, J., concurs in the decree as to No. 93,985 and dissents as to Nos. 93,975 *669 to 93,984, the defamation charges, for the reasons assigned on original hearing.
SUMMERS, J., dissents for the reasons assigned.
SUMMERS, Justice (dissenting).
I view the issues of this case to require an interpretation of the phrase "malicious publication or expression" as used in Article 47 and "actual malice" as used in Article 49 of the Criminal Code. I do not find these statutes to be unconstitutional per se as applied to public figures and candidates for public office. Snyder v. Ware, 314 F.Supp. 335 (1970), affirmed 397 U.S. 589, 90 S.Ct. 1355, 25 L.Ed.2d 595.
In my opinion a charge of defamation lies under Article 47 if the utterance was made with knowledge that it was false or with reckless disregard as to whether it was false or not in keeping with the standard announced in St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); Curtis Publishing Co. v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967); Moity v. Louisiana, 379 U.S. 201, 85 S.Ct. 323, 13 L.Ed.2d 339 (1964); Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964); New York Times v. Sullivan, 376 U.S. 244, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); State v. Moity, 245 La. 546, 159 So.2d 149 (1963).
I respectfully dissent.
NOTES
[1] A 1968 amendment to this statute (after the Garrison decision by the United States Supreme Court in 1964) changed the penalty but not the definition of the crime.
[2] We are limited in our consideration here to public expression directed at a public figure or one involved in public affairs. Our remarks cannot therefore be extended under this holding to defamatory statements concerning purely private individuals. However, it is well to note that when the "clear and present danger" or "fighting words" standard is not used for the purpose of defining the crime of defamation, the punishment of public expression as to private individuals through true statements, though made with "actual malice" "hatred, ill will or enmity or a wanton desire to injure", may be constitutionally infirm.